(118 App. Div. 368)

### BUSHE et al. v. BEDFORD.

(Supreme Court, Appellate Division, First Department. March 22, 1907.)

1. TRUSTS—ACTION FOR ACCOUNTING—ISSUES—VALIDITY OF DEEDS.

Where an action is brought by a trustee for the settlement of his accounts and the construction of the deed of trust, and to determine the interests of the parties, the legatees and devisees of a former owner of the property, who was also the beneficiary under the trust deed, may contest the validity of the deed from such former owner and the trust deed which was given by his grantee, but they cannot demand an accounting by the trustee as executor of the father of their testator; all parties interested not being before the court.

2. SAME—EVIDENCE—VALIDITY OF DEED—RATIFICATION OF DEEDS.

Evidence, in an action for the settlement of the accounts of a trustee, considered, and *held* sufficient to show validity of a deed of the property from the cestui que trust, as well as ratification of that deed and the trust deed from his grantee.

3. SAME—EXPRESS TRUSTS—VALIDITY—RATIFICATION—REVOCATION.

A conveyance by which a trustee acquires an interest in the property is not absolutely void, but voidable at the election of the cestui que trust; and, if ratified by him, it cannot be avoided by his personal representatives.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, §§ 258–265, 403.]

Appeal from Judgment on Report of Referee.

Action by Eugene L. Bushe and others against Helen M. Bedford and others. Judgment for plaintiffs, and defendant Helen M. Bedford appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Henry W. Bookstaver, for appellant.
Franklin W. M. Gutcheon, for respondents Bushe and others.
Frederic R. Coudert, for respondents Zerega and others.
Tompkins McIlvaine, for respondent Wright.

INGRAHAM, J. This action was brought for the judicial settlement of the accounts of the plaintiff, as surviving trustee of a trust contained in a deed executed on the 8th of June, 1892, whereby the defendant Mary E. Wright conveyed certain property to Gunning S. Bedford, 2d, and Eugene L. Bushe, as trustees for Gunning S. Bedford, 3d. The

complaint asks the court to construe the deed of trust and to deter-
mine its effect with reference to any and all questions that may arise
upon the accounting had in this action concerning the validity, con-
struction, or effect of the said deed; and also to determine the various
interests of the parties to this action in the trust estate and funds, and
to determine the ultimate diposition of the trust property. By this
deed certain real property situated in the county of New York was
conveyed to Gunning S. Bedford, described as 2d, and Eugene L.
Bushe, as trustees for Gunning S. Bedford, Jr., hereinafter described
as Gunning S. Bedford, 3d. The property conveyed was in trust "to
receive the rents, issues and profits thereof, and after the payment of
all charges and expenses, to apply the net income thereof to the use,
maintenance and support of the said Gunning S. Bedford, Jr., in a style
and manner befitting his station in life," with power to the trustees,
during the lifetime of the said Gunning S. Bedford, 3d, "to apply such
portion of such net rents, income and profits, as they may deem prop-
er, to the use, maintenance and support of the wife of the said Gunning
S. Bedford, Jr., in case he shall marry, and to the use, maintenance,
support and education of any lawful issue of said Gunning S. Bedford,
Jr." That:

"Upon the death of the said Gunning S. Bedford, Jr., said trustees shall con-
vey, pay and make over the whole of said trust estate then in their hands to
the then living lawful issue of said Gunning S. Bedford, Jr., and to the de-
scendants of any such lawful issue of his who shall have died leaving descend-
ants him or her surviving. * * * And in case there shall then be no sur-
viving lawful issue of said Gunning S. Bedford, Jr., nor any living descendants
of such issue. then to convey, pay and make over all of said trust estate then
in their hands to the lawful heirs at law of the said Gunning S. Bedford, Jr.,
on his father's side."

The trustees were also given power to apply the whole or any part
of the capital of the trust estate to the use and benefit of Gunning S.
Bedford, 3d. This instrument was dated June 8, 1892, was acknowl-
edged on the 9th of May, 1893, and was recorded in the office of the
register of the county of New York on the 22d day of November,
1898. It was stipulated by all the parties to the action that the plain-
tiff had paid over to Gunning S. Bedford, 3d, or expended for him dur-
ing his lifetime, all of the net income of the trust estate.

The complaint alleges, and it is admitted, that Gunning S. Bedford,
3d, died in the city of Paris on or about the 17th day of February,
1903, without lawful issue him surviving, leaving the defendant Helen
M. Bedford, as his widow, and leaving a last will and testament by
which he gave, devised, and bequeathed all his property, real and per-
sonal, to his widow, the defendant Helen M. Bedford, and appointed
her sole executrix, which last will and testament was duly admitted to
probate by the surrogate of the county of New York, and letters tes-
tamentary duly issued to her. She appeared individually and as ex-
ecutrix of Gunning S. Bedford, 3d. Her answer, after admitting the
execution of the deed under which the plaintiffs claimed to act as trus-
tees, alleges that Gunning S. Bedford, 3d, was the only child of M.
Amelia and Dr. Frederick Bedford; that M. Amelia Bedford died on
or about the 14th day of July, 1871, leaving a last will and testament

which was admitted to probate by the surrogate of the county of New York on the 31st day of July, 1871, and in which will she appointed her husband, Frederick Bedford, as executor and trustee of her estate; that by that will the property of the testatrix, M. Amelia Bedford, was devised and bequeathed, one-half thereof to her husband, Frederick Bedford, absolutely, and the other half to her husband in trust for her child, Gunning S. Bedford, 3d, to apply the rents, income, and profits to the support and education of the child during minority, and to assign the principal of said share, with all accumulations, to such child on his attaining lawful age; that the said Frederick Bedford received as a portion of the estate of his wife certain real property that had belonged to his wife at the time of her death, the title to which was taken in his own name individually, or as executor of his wife, M. Amelia Bedford; that such real property was held and controlled by the said Frederick Bedford until his death on the 28th day of December, 1891.

He left a last will and testament appointing Gunning S. Bedford, 2d, the uncle of Gunning S. Bedford, 3d, and the plaintiff Eugene L. Bushe, as executors and trustees under his will. By this will Frederick Bedford left three-fourths of his residuary estate to the plaintiff Eugene L. Bushe and Gunning S. Bedford, 2d, in trust for Gunning S. Bedford, 3d, during life, with remainder to his issue and remainder over in case he should die without issue. That, on the death of Frederick Bedford, Gunning S. Bedford, 2d, and the plaintiff Eugene L. Bushe took possession of all the property of Frederick Bedford and held the same under the trust contained in such will. Gunning S. Bedford, 2d, died on the 29th day of October, 1893, leaving a last will and testament of which the plaintiffs Bushe and Fiske were executors, which will was duly admitted to probate and letters testamentary were issued thereon; that upon Gunning S. Bedford, 3d, arriving at the age of 21 on the 7th day of June, 1892, he was thus entitled to an undivided half interest in the property left by his mother, with any income thereof which had not been applied to his support and education. He was also entitled to receive the income during his life of the property of his father, Frederick Bedford, which was held in trust by the plaintiff Eugene L. Bushe, as surviving trustee, and was also entitled to an interest in the property of Gunning S. Bedford, 2d, which was held in trust by the plaintiffs Eugene L. Bushe and Fiske, as trustees. It would appear that these various properties had been held together and controlled by the plaintiffs Eugene L. Bushe and Gunning S. Bedford, 2d, until the death of Gunning S. Bedford, 2d, and subsequently by the plaintiff Eugene L. Bushe, down to the death of Gunning S. Bedford, 3d. It was alleged that the said Gunning S. Bedford, 3d, had no experience in business and no aptitude to the same, and his rights in the estate of his mother, M. Amelia Bedford, were never discovered by him, nor was he ever informed of them by the plaintiffs Eugene L. Bushe and Gunning S. Bedford, 2d; that after the death of Frederick Bedford, Gunning S. Bedford, 2d, had acted as trustee, guardian, agent, and attorney for the said Gunning S. Bedford, 3d, who implicitly trusted him and was guided by his wishes and desires.

The answer then sets up various counterclaims. The only one

necessary to be considered in this case is based upon the following facts: When Gunning S. Bedford, 3d, arrived at age on the 7th day of June, 1892, he was entitled to an interest in certain real property which had been held by his father in trust. On that day he executed a deed conveying this real property to the defendant Mary E. Wright. There was no consideration for this deed, and it was executed under the advice of the plaintiff Bushe and Gunning S. Bedford, 2d, with the understanding that it was for the purpose of putting this property in trust for his benefit. Subsequently the defendant Mary E. Wright conveyed this same property to Gunning S. Bedford, 2d, and Eugene L. Bushe, as trustees for Gunning S. Bedford, 3d. And it is this deed which is described in the complaint. The counterclaim alleges that, if the said deed was executed by Gunning S. Bedford, 3d, the same was void as having been obtained by fraud and undue influence and without consideration, and especially by the undue influence of said Eugene L. Bushe and said Gunning S. Bedford, 2d, and Mary E. Wright. And the defendant Helen Martha Bedford asks that the deed from Gunning S. Bedford, 3d, to Mary E. Wright, and the deed of Mary E. Wright to the plaintiff Bushe and Gunning S. Bedford, 2d, as trustees, be set aside and declared void; that the widow of Gunning S. Bedford, 3d, recover all of the assets of the estate of the mother of Gunning S. Bedford, 3d, to which he was entitled; that the defendant Helen M. Bedford, as legatee and devisee of Gunning S. Bedford, 3d, be declared to be the owner of all the property to which Gunning S. Bedford, 3d, was entitled; that the plaintiffs be required to account for all the estate of M. Amelia Bedford in which said Gunning S. Bedford, 3d, had an interest; that all the property of Frederick Bedford be sold to realize the amount of the interest of Gunning S. Bedford, 3d, in the estate of M. Amelia Bedford; and that the plaintiff Bushe, as sole surviving executor of Frederick Bedford, account for and render an account of all the doings and acts of said Frederick Bedford as executor of the estate of M. Amelia Bedford.

The only question that is at issue in this action relates to the validity of the deed from Gunning S. Bedford, 3d, to Mary E. Wright, and the deed from Mary E. Wright to the plaintiff Bushe and Gunning S. Bedford, 2d, in trust. The questions in relation to the accounting of Bushe, as executor of Frederick Bedford, cannot be settled in this case, for it does not appear that all the parties interested in the estate of M. Amelia Bedford are before the court. This action having been based entirely upon the trust deed by which the plaintiff Bushe became trustee for the benefit of Gunning S. Bedford, 3d, it was competent for the legatees and devisees of Gunning S. Bedford, 3d, to contest the validity of the deeds; but the other relief which the defendants ask in the answer by way of counterclaim has no relation to the validity of this deed or the action of the plaintiffs as trustees under it.

Gunning S. Bedford, 3d, was born on the 7th day of June, 1871. His mother, M. Amelia Bedford, died on July 14, 1871. Letters testamentary were issued to Frederick Bedford on her estate on July 31, 1871. At the time of her death, she was entitled to seven-sixteenths of the property of a former husband named Lucius Chitten-

den, and, after the death of M. Amelia Bedford, the executor of the estate of Lucius Chittenden sold at public auction all of the real property of the said Chittenden, and at such sale Frederick Bedford purchased portions of the property and paid therefor by giving a receipt to the executor for the interest of his deceased wife in said estate. That he took conveyances of approximately one-half of the lands so purchased to himself individually on account of the one-half share of his wife's estate devised and bequeathed to him, and the other one-half to himself as executor of his wife, on account of the one-half share of his wife's estate devised and bequeathed to him in trust for their son, Gunning S. Bedford, 3d. These conveyances were all recorded prior to the year 1873, and the property remained in this condition until his death on December 28, 1891, and it was the property that he held as executor that vested in Gunning S. Bedford, 3d, that he conveyed to Mary E. Wright, the conveyance of which is sought to be set aside in this action.

It appeared that Gunning S. Bedford, 3d, was over 20 years of age at the death of his father. Apparently he had lived with his father from the death of his mother. It is stated that after his father died he continued to reside with his uncle, Gunning S. Bedford, 2d; that, before his arrival at the age of 21 years of age, he had been living a wild life, was addicted to gambling, and had some difficulty with a woman; that he had bought jewelry and other articles on credit and pawned them without paying for them. After the death of Frederick Bedford, and before Gunning S. Bedford, 3d, became of age, Gunning S. Bedford, 2d, and Mr. Bushe had several consultations in relation to this property. As the result of their consultations, a deed from Gunning S. Bedford, 3d, to Mary E. Wright, and one from Mary E. Wright to Gunning S. Bedford, 2d, and the plaintiff Bushe, as trustees, were prepared. On the day that Gunning S. Bedford, 3d, became of age, he came to Mr. Bushe's office with Gunning S. Bedford, 2d, and Mary E. Wright. It was then stated to him by Gunning S. Bedford, 2d, and Mr. Bushe that they desired him to execute this deed to protect his property and to preserve it for his benefit; that it was exposed to risks incident to the debts that he was incurring and might incur; that it was then said that Mary E. Wright was to execute a deed which would secure to Gunning S. Bedford, 3d, the property conveyed to her by him; and that, to carry that arrangement into effect, the deed to Mary E. Wright was executed by Gunning S. Bedford, 3d, and the trust deeds described in the complaint were executed.

Bushe testified that he had no previous conversation with Gunning S. Bedford, 3d, prior to the date that he executed the deed; that at that date he knew of the will of M. Amelia Bedford and had examined it; that it had been arranged before that Gunning S. Bedford, 3d, should go to Europe; that it was stated to Gunning S. Bedford, 3d, at the time the deed was executed, that it was necessary to make some disposition or arrangement in regard to this real estate to protect it from the onslaught of creditors; that Gunning S. Bedford, 2d, and Bushe had ascertained a good many liabilities of Gunning S. Bedford, 3d; that he had been giving promissory notes and drafts, and they

had heard of many things which caused them anxiety about the future of this property which had descended to him from his mother.

After the execution of this deed to Mary E. Wright, Gunning S. Bedford, 3d, left New York for Europe, and, with the exception of one or two short visits to this country, he remained there until his death, in 1903. During this time, the plaintiff Bushe acted as trustee for this property, receiving the income from these three trust estates and making remittances to Gunning S. Bedford, 3d, from time to time. Upon one of the trips to this country he married the defendant Helen M. Bedford, and returned with her to Paris, and his ·correspondence with Mr. Bushe during the time that he was in Paris shows that he was in constant difficulties about money matters; he and his wife constantly requesting that additional moneys be sent to them. Thus, for over 11 years, from the time he executed this· deed, he continued to receive the income to which he was entitled. At no time during his life did he in any way object to the execution of this instrument, or elect to rescind it. There is no evidence that his uncle, with whom he lived after the death of his father, and upon whose advice he executed this deed, did not fully explain to him the situation in relation to it. There is no evidence that any duress or influence was exercised to persuade him to execute it. So far as appears, it was a voluntary conveyance, made with full knowledge of the situation and of his rights under it. This whole property was to be held for his benefit during his life, and the remainder was to become the absolute property of his children. So far as appears, there was not the slightest attempt to take any advantage of him, except to prevent the property that he had inherited from being squandered; and the picture that we have of this young man before the execution of the deed and his subsequent life in Paris, as disclosed by his own letters and the letters of his wife, certainly justified the judgment of his uncle and Mr. Bushe in considering that his interest and the interest of his children, if any, would be subserved by the arrangement that was made.

The position is taken by the defendant—and is the only one that needs any consideration—that, in consequence of the relation that existed between Gunning S. Bedford, 3d, and Gunning S. Bedford, 2d, and the plaintiff Bushe, any instrument that he executed on their advice or procurement, in which they or either of them would benefit, to be sustained, must be affirmatively shown to have been executed with full knowledge of the situation and his rights in relation to the property, and that the instruments executed were advantageous and proper under the circumstances, and that the proof fails to show that any such disclosures were made to him. It is claimed, because, in the event of Gunning S. Bedford, 3d, dying without issue before the death of Gunning S. Bedford, 2d, that Gunning S. Bedford, 2d, would secure an advantage to himself, and that therefore these instruments must be adjudged void; but the grantor, Gunning S. Bedford, 3d, never elected to avoid these deeds, or in any way indicated his dissatisfaction with the arrangement that had been made by him and for his benefit. I can find no evidence that he was not fully apprised of his interest in his mother's estate, and that it was this interest

that he had conveyed. He certainly must have understood that he was conveying property in which he had an interest. He received during his life whatever income was received by the trustees from the trust property which he had conveyed. He was in constant need of money, but, during all the time, he made no demand for a rescission of this conveyance, or demanded that any of the property that he had conveyed should be reconveyed to him. He made no claim that he had been deceived, that any advantage had been taken of him, or that he wished the arrangement which assured the property to him for his life, and the remainder afterwards to his children, to be in anywise altered.

If we may assume that he would have had the right to avoid these instruments at any time during his life, upon proof of any fact which would justify an inference that he executed them without knowledge of their contents, or without realizing what he had done, or without full knowledge of his rights to the property under his mother's will, his silence during these years, and the receipt of the income of the trust property from the trustees, certainly must be considered as an election to affirm the arrangement that was made which was certainly for his benefit. And, even now, there is not the slightest evidence that he ever wished to change that arrangement, or ever elected to avoid the conveyance. The two persons who had to do with this arrangement (the grantor and his uncle, Gunning S. Bedford, 2d) are both dead. What passed between them we do not know; but there is certainly no presumption that the uncle, who had lived with the boy from his infancy, who left him a life interest in a large portion of his property, and who apparently had the greatest interest in his welfare, procured, by any improper influence or otherwise, the execution of this conveyance. Certainly, after 11 years had passed, during which time the one interested had by his action ratified the arrangement that had been made for him, and died without ever expressing any dissatisfaction with it, or without making any election to avoid it, his executrix cannot elect to have the whole instrument declared void.

It is an elementary principle that a deed or conveyance by which a trustee, or one occupying a position of confidence and trust, acquires an interest in the property conveyed, is not absolutely void, but voidable at the election of the beneficiary or cestui que trust; that, until such beneficiary or cestui que trust elects to avoid it, the deed is valid. And from this it follows that such a deed may be ratified, and, when once ratified, an action cannot be maintained by the grantor or his personal representatives who avoided it. Dodge v. Stevens, 94 N. Y. 209. In that case it is said:

"But a purchase by a trustee, for himself, of trust property, in respect of which he has a duty to perform inconsistent with the character of purchaser, is voidable at the election of the cestui que trust, and not absolutely void. The cestui que trust may affirm the transaction and treat the trustee as purchaser, or he may disaffirm the purchase, and, in case of real estate, if the title has become vested in the trustee by a conveyance, may compel the trustee to convey to him, or in trust for him, as the case may require."

In Harrington v. Erie County Savings Bank, 101 N. Y. 257, 4 N. E.
346, the same principle was applied; the court saying:

"The appellant relies upon the well-established doctrine that a trustee can-
not purchase or deal in the trust property in his own behalf, or for his own
benefit, directly or indirectly. This is a rule of equity, and is not to be im-
paired or weakened. Such a purchase, however, is not void ab origine, but
voidable only, and at the instance of the cestui que trust, or of a party who
has acquired the rights which belong to one in that relation. Even while in
the hands of the trustee, the title may be confirmed as well by acquiescence
and lapse of time as by the express act of the cestui que trust."

And Kahn v. Chapin, 152 N. Y. 305, 46 N. E. 489, was determined
by the application of the same principle, and the same principle has
been applied in the case of a conveyance by a person of unsound mind.

I think the conduct of the grantor, during the 11 years of his life
after the execution of this deed, his receipt of the income of the trust
property conveyed by the deed, and his dying without electing to avoid
it, was a ratification which estopped his personal representatives from
maintaining an action to avoid it; and certainly this would be so in
the absence of any evidence tending to show that the grantor was not
fully informed of the situation, and of his rights and interest in the
property, and the circumstances which rendered the arrangement that
was made beneficial.

My conclusion, therefore, is that the judgment appealed from should
be affirmed, with costs. All concur.