METROPOLITAN TRUST CO. OF CITY OF NEW YORK v. STALLO et al.
(No. 6862.)

(Supreme Court, Appellate Division, First Department.  March 12, 1915.)

1. PLEADING ⬥193—DEMURRER—MISJOINDER OF CAUSES OF ACTION.
    Under Code Civ. Proc. § 488, subd. 7, declaring a complaint demurrable
    where causes of action have been improperly joined, it is not a ground
    of demurrer in equity that the complaint contains the material for more
    than one action.
      [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 425, 428–435,
    437–443; Dec. Dig. ⬥193.]

2. ACTION ⬥48—JOINDER—CONSISTENCY—PARTIES AFFECTED—STATUTE.
    Under Code Civ. Proc. § 484, subd. 9, permitting the uniting in one
    complaint of two or more causes of action upon claims arising out of the
    same transaction, or transactions connected with the same subject of action,
    and providing that the causes of action so united must be consistent
    with each other, and, except as otherwise prescribed by law, affect
    all the parties to the action, a trust company, individually and as
    administrator, might maintain an action for an accounting to determine,
    under complicated conditions and upon numerous conflicting claims, the
    amount for which it was chargeable to the estate, incidentally seeking the
    adjustment of some of the conflicting claims as a prerequisite to the determination
    of its chargeability, and before which adjustment it would
    be impossible for plaintiff to know of what the estate consisted, since
    the separate causes of action, if any, were not inconsistent, and since
    the main cause of action would affect all of the defendants in one way
    or another; it not being essential that they should all be affected alike,
    or that their pecuniary interests be the same, or that all be interested in
    the incidental relief obtained by the others.
      [Ed. Note.—For other cases, see Action, Cent. Dig. §§ 241–243; Dec.
    Dig. ⬥48.]

3. PARTIES ⬥14—PLAINTIFFS—MISJOINDER—STATUTE.
    Under Code Civ. Proc. § 446, providing that all persons having an interest
    in the subject of the action and in obtaining the judgment demanded
    may be joined as plaintiffs, no improper joinder of parties plaintiff
    arose out of the fact that plaintiff, in an action for an accounting to
    ascertain its chargeability to an estate, sued both in its individual capacity
    and as administrator of the estate; a sufficient reason for such
    joinder being that, while technically the title to the assets of the estate
    were vested in plaintiff as administrator, liability for such assets and for
    its acts as administrator would fall upon the plaintiff individually, so

that it was interested in both capacities, especially in view of the fact that, if the action had been brought by plaintiff solely as administrator, it would have itself been a proper party defendant in its individual capacity.

[Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 13, 16, 17½; Dec. Dig. ☜14.]

4. EXECUTORS AND ADMINISTRATORS ☜430—MANAGEMENT OF ESTATE—INDIVIDUAL LIABILITY.

The acts of an administrator in respect to the estate of which he is trustee, though proper in themselves, may result in his individual liability.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1683–1688; Dec. Dig. ☜430.]

Laughlin and McLaughlin, JJ., dissenting.

Appeal from Special Term, New York County.

Suit by the Metropolitan Trust Company of New York, individually and as administrator of the estate of Alexander McDonald, deceased, against Edmund K. Stallo and others, impleaded, etc. Demurrer to complaint by three defendants sustained, and plaintiff appeals. Order reversed, with leave to defendants respondents to withdraw demurrer and answer on payment of costs.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

John G. Milburn, of New York City (Walter F. Taylor, of New York City, on the brief), for appellant.

Rockwood & Haldane, of New York City (Nash Rockwood, of New York City, of counsel), for respondents.

SCOTT, J. The demurrer of three of the defendants has been sustained, on the grounds that there is a misjoinder of parties plaintiff and also a misjoinder of causes of action. The plaintiff, the Metropolitan Trust Company of the City of New York, sues both as an individual and as the administrator of the goods, chattels, and credits of Alexander McDonald, deceased. The condition of the estate of said McDonald, as disclosed by the complaint, is a very complicated one, and the professed purpose of the present action is to clear up and disentangle these complications, to determine the proper disposition of certain funds now in plaintiff's hands, to obtain an adjudication as to the sums for which it is justly chargeable, and to permit it to account therefor. The defendants embrace all persons who appear to have any claim to any portion of the estate. The following summary of the complaint (adopted from one of the briefs) fairly presents the questions upon which this appeal turns:

"Alexander McDonald died intestate in March, 1910, leaving as his only next of kin his granddaughters, Laura McDonald Stallo and Helen McDonald Stallo Murat, both of whom were then minors. Their father and general guardian was Edmund K. Stallo. Stallo was appointed administrator of the McDonald estate in October, 1910. The plaintiff, Metropolitan Trust Company, upon Stallo's petition, was appointed coadministrator with him. In December, 1910, Stallo's letters were revoked, leaving the Trust Company sole administrator. Stallo, while acting as administrator, filed an inventory, of which a copy is annexed to the complaint as Exhibit I, and after his removal filed a

report which is annexed to the complaint as Exhibit II. Both in the inventory and report Stallo claims that there was a partnership between himself and McDonald, and classifies as partnership assets securities valued by him at the sum of $2,447,472.60, and classifies as partnership indebtedness debts amounting to $2,685,719.28. Stallo, however, after the appointment of the plaintiff as administrator, did not in any way act as liquidator of the alleged partnership, or take any steps for the settlement of its affairs. The Trust Company did not know, and never has been able to ascertain, whether or not the partnership which Stallo claims to have existed, did in fact ever exist. It alleges, however, that for some years prior to McDonald's death he and Stallo were engaged in joint undertakings having to do with the construction of the Mobile, Jackson & Kansas City Railroad and the Gulf & Chicago Railway (afterwards reorganized into the New Orleans, Mobile & Chicago Railroad), and that some at least of the indebtedness which Stallo classes as partnership indebtedness was incurred for the purposes of such undertakings, and that many of the securities which he classes as partnership property were acquired in connection therewith.

"Several years before McDonald's death the Metropolitan Trust Company began lending money on notes of which McDonald and Stallo, or one of them, were makers or indorsers, and to secure which stock, bonds, etc., of the Mobile, Jackson & Kansas City Railroad Company and of the Gulf & Chicago Railway Company were pledged. When McDonald died, the Trust Company held a promissory note made by McDonald & Stallo (McDonald's name being signed by Stallo at attorney), dated December 8, 1909, for $2,-700,000, payable 12 months from date. As collateral security for this note there were pledged 2,000 shares of the capital stock of the Standard Oil Company (New Jersey) and bonds and stock of the New Orleans, Mobile & Chicago Railroad Company. The 2,000 shares of Standard Oil Company stock were the individual property of Alexander McDonald. The Metropolitan Trust Company never has known what the respective interests of McDonald and Stallo in the railroad stocks and bonds were. In the summer and fall of 1911 the Trust Company, being then sole administrator of the McDonald estate, sold the Standard Oil stock and the railroad stocks and bonds. These sales produced enough to pay the amount due on the note held by the Trust Company and to leave a balance of $434,350.93. This amount is in the hands of the Trust Company.

"The New Orleans, Mobile & Chicago Railroad Company, which issued the railroad stocks and bonds pledged with the Trust Company as collateral for the $2,700,000 note, was the result of a reorganization perfected about December, 1909, of the Mobile, Jackson & Kansas City Railroad Company and of the Gulf & Chicago Railway Company. According to the plan of reorganization, the bonds of the new company were issued for bonds, notes, and other indebtedness of the old companies, dollar for dollar. The holders of the stock of the old companies had to pay a 20 per cent. assessment on their stock, and upon such payment became entitled to receive new common stock to the amount of the old stock held by them, bonds to the amount of the assessment, and preferred stock to the amount of 20 per cent. of the assessment. At the time of the reorganization, 10,000 shares of the stock of the old companies were owned or claimed by Gen. Brayton Ives. The assessment on this stock was $200,000, and this assessment was paid by McDonald and Stallo out of the proceeds of the $2,700,000 note, and on payment of this assessment there were issued in respect to the 10,000 shares of old stock 10,-000 shares of common stock of the new company, 400 shares of its preferred stock, and $200,000 par value of its bonds. The stock of the new company so issued never came into the possession of the Trust Company. The bonds and preferred stock were retained by Ives as his own property, but on or about February, 1912, he delivered said bonds and preferred stock and also $20,000 (the amount of coupons collected by him on the bonds) to the attorneys of the Trust Company for and on its behalf as if deposited with it, as additional security for the loan made by it to McDonald and Stallo, and the loan having been paid, to be held by it for whosoever might be entitled thereto, and in June, 1913, he sent a communication to the Trust Company stating that he had decided to relinquish any and all claims to said bonds,

preferred stock, and moneys. These bonds, shares of preferred stock, and moneys are now in the hands of the Trust Company.

"In March, 1913, the defendant Edward V. Harmon, claiming to be a judgment creditor of the Alabama Securities Company, brought an action against the Alabama Securities Company, Metropolitan Trust Company, individually and as administrator, Edmund K. Stallo, and others, and also other actions against the Trust Company as administrator. The defendant Charles E. Levy also brought an action against the same parties. The facts which formed the basis for these actions are as follows: In December, 1908—that is to say, about a year before the $2,700,000 note was given—McDonald and Stallo and one William D. Stratton made and delivered to the Trust Company a promissory note for $2,250,000, and pledged as collateral therefor various stocks, bonds, etc., of the two old companies. Part of this note had been paid and part of the collateral therefor had been surrendered before the $2,700,000 note was given in December, 1909. The balance due was paid by McDonald and Stallo out of the proceeds of the latter note, and there was also paid out of said proceeds the assessment payable under the plan of reorganization on the securities of the old roads, that had been held up to that time as collateral for the $2,250,000 note. The securities of the new road issued pursuant to the plan of reorganization in respect to these securities of the old roads, were the railroad securities which formed a part of the collateral for the $2,700,000 note.

"Edward V. Harmon and Charles E. Levy, in the actions brought by them, claim that all or part of the securities of the old roads pledged as security for the $2,250,000 note were owned by the defendant the Alabama Securities Company, or that it had an interest therein, and that the Metropolitan Trust Company, individually and also as administrator, Stallo, and others, are bound to account for such securities or for the proceeds thereof.

"McDonald, prior to December, 1909, had advanced very large amounts of money to the Alabama Securities Company, and that company had either transferred to McDonald and Stallo whatever rights it had in the securities of the old companies pledged as collateral for the $2,250,000 note, or had fully authorized the action taken by Stallo and McDonald in reference to those securities. The Trust Company has never had any knowledge as to what, if any, was the actual interest of the Alabama Securities Company in the securities of the old companies, or what, if any, interest it had in the securities of the new company pledged to secure the $2,700,000 note. The securities of the new company were all sold by the Trust Company before either the Harmon or the Levy actions were commenced, and any interest which the Alabama Securities Company may have had in such securities is confined to the balance of the proceeds of the sale by the Trust Company of the collateral for the $2,700,000 note. This balance is the sum of $434,250.93, referred to above, and is now held by the Trust Company subject to the determination of the question of the ownership thereof and the interests therein.

"Claims have been filed against the estate of Alexander McDonald on various notes secured by collateral claimed by Stallo to be partnership assets, or claimed by him to be his individual property, but some of which prima facie are the property of the Alabama Securities Company. The Trust Company, as administrator, has had to pay a number of such claims, and has in its possession a large amount of securities which were held as collateral by the claimants, and it does not know and never has been able to ascertain what the respective interests of the McDonald estate, Edmund K. Stallo, and the Alabama Securities Company are therein. It has also received and now holds other securities which are claimed by Stallo as his own property, or to be partnership assets. A great number of claims have been filed against the estate, based on obligations for which Stallo was either primarily liable or jointly liable with McDonald. Some of these claims are still pending. Some, as above stated, have been paid, and the collateral therefor has been received by the Trust Company. The Trust Company, as administrator, has some interest in these securities, but has never been able to ascertain the extent of such interest.

"The complaint, after setting forth the facts above summarized, proceeds:

" '(37) Without an accounting to be had herein with respect to the matters hereinabove set forth, and a determination with respect to the assets that

have come into the possession of the plaintiff, and an ascertainment as to which of said assets are the property of the estate of Alexander McDonald, and which thereof are the property of said estate jointly with others, and the interest therein of said estate, and what, if any, interest the defendant Stallo or the defendant Alabama Securities Company has therein or in any thereof, and a marshaling of the individual and joint liabilities of said McDonald and Stallo and of their individual and joint assets, and a determination of the conflicting claims in respect to the bonds and preferred stock of the New Orleans, Mobile & Chicago Railroad Company and the interest heretofore collected on the same now held by the plaintiff's attorneys for and on its behalf, as alleged in the foregoing paragraph 27 hereof, and a determination as to the amount of the assets of the estate of the said Alexander McDonald, the plaintiff is unable to determine what portion of the moneys, assets, and other property in its hands belong to the estate of Alexander McDonald, and what portion belongs to others, if any, or to render an account to the Surrogate's Court as such administrator of its acts, transactions, receipts, and disbursements, to the end that it may be settled and allowed, or to have the amount of the transfer tax upon said estate determined and paid, or to pay over and deliver to others any portion of said moneys, property, or other assets to which they may be entitled.

" '(38) By reason of the premises, and of the matters .and things hereinbefore set forth, the Surrogate's Court of the County of New York is without the power and jurisdiction to determine the matters involved in this action and to do full and complete justice between the parties hereto.'

"The Trust Company demands judgment: (1) That it be ascertained and determined what the interests of the estate of Alexander McDonald and of the defendant Edmund K. Stallo and of the Alabama Securities Company, respectively, are in the net proceeds of the collateral for the $2,700,000 note, and in the stocks, bonds, and securities which have come- into the Trust Company's possession; (2) that Edmund K. Stallo be required to account in respect to all of the transactions in which he and McDonald participated; (3) that with respect to the $200,000 of bonds (including the interest thereon), and the preferred stock above referred to, the interest therein of the estate of Alexander McDonald, and of Stallo and of the Alabama Securities Company, be ascertained and determined, and also their respective liabilities on account thereof; (4) that it be adjudged and determined that the collateral pledged with the Trust Company to secure the $2,250,000 note and the $2,-700,000 note was so pledged with the consent of the Alabama Securities Company; (5) that it be adjudged and determined that plaintiff may account herein for its acts, proceedings, receipts, and disbursements as administrator of the estate of Alexander McDonald, to the end that it may be ascertained and determined for what amount and for what property and assets plaintiff is chargeable as such administrator, and its accounts settled and allowed; (6) that it be adjudged and determined what disposition shall be made of the property and assets found in its hands, and that plaintiff be discharged from liability to the parties, or any of them, on account of the transactions set forth; (7) that each of the defendants be enjoined from maintaining suits against the plaintiff, either in its individual capacity or as administrator, concerning any of the matters and things set forth in the complaint."

[1, 2] While it may be that it would be possible to find in this complaint the material for more than one action, this is by no means uncommon in actions in equity, nor is it a ground of demurrer. It is only when causes of action are *improperly* united that a complaint is obnoxious to demurrer. Code Civ. Proc. § 488, subd. 7. Primarily and mainly this is an action for an accounting to determine, under very complicated conditions and in the face of very numerous conflicting claims, with just what the plaintiff is chargeable to the estate of McDonald. Incidentally it is sought to procure the adjustment of some of the conflicting claims to which we have referred, and indeed.

such an adjustment is a necessary incident and prerequisite to the determination of the primary question sought to be determined. Until all these incidental questions are answered, and the claims of persons not directly interested in the estate to the moneys and securities apparently constituting a part of the estate are adjusted and determined, it will be impossible for plaintiff or any one else to know precisely of what the estate consists. Similar complaints have frequently been upheld. It has been considered that they fall within subdivision 9 of section 484 of the Code of Civil Procedure, which permits the uniting in one complaint of two or more causes of action "upon claims arising out of the same transaction, or transactions connected with the same subject of action, and not included within one of the foregoing subdivisions of this section." It is true that this provision is qualified by the further provision in the same section that the causes of action so united must be consistent with each other, and, except as otherwise prescribed by law, that they affect all the parties to the action.

The separate causes of action, if there be such, which the respondents insist are to be found in the complaint, are certainly not inconsistent, and it is also certain that the primary and predominant cause of action stated by the complaint, as well as the judgment sought, will affect all of the defendants in one way or another. It is not essential in equity that they shall all be affected alike. People v. Equitable Life Assurance Society, 124 App. Div. 727, 109 N. Y. Supp. 453. The main object of the action, as has been said, is to ascertain and have judicially determined just what constitutes the assets of the estate for which plaintiff is accountable. Clearly the next of kin are vitally interested in this question, and are proper and even necessary parties. Equally clearly the other defendants are also interested, for they all claim some right or interest in the apparent assets.

"The fact that their pecuniary interests may not be the same, or that some may not be interested in the incidental relief obtained by others, does not prevent all being interested in the subject of the action and in obtaining the judgment demanded." Mullin v. Mullin, 119 App. Div. 521, 104 N. Y. Supp. 323; Simar v. Canady, 53 N. Y. 298, 13 Am. Rep. 523; Shepard v. Manhattan Ry. Co., 117 N. Y. 442, 23 N. E. 30.

"It is proper, in a suit in equity for an accounting, to bring in all the parties to be affected thereby, and to set forth such facts germane to the accounting as will give the plaintiff in such an action adequate and complete relief; and a complaint which includes such parties and transactions is not open to demurrer upon the ground of improper rejoinder of parties or causes of action." Donnelly v. Lambert, 62 App. Div. 189, 70 N. Y. Supp. 963.

[3, 4] Nor do we find any improper joinder of parties plaintiff or of causes of action arising out of the fact that the plaintiff sues both in its individual capacity and as administrator of the McDonald estate. Such a joinder has been frequently upheld. Donnelly v. Lambert, supra; Shuttleworth v. Winter, 55 N. Y. 624; Bushe v. Wright, 118 App. Div. 320, 103 N. Y. Supp. 410. A sufficient reason for such a joinder is that, while technically the title to the assets of the estate are vested in plaintiff as administrator, the liability for such assets and the responsibility for the acts of the administrator will fall upon the

plaintiff individually; for, as was said in Newcombe v. Lottimer, 12 N. Y. Supp. 381,[1] affirmed 128 N. Y. 618, 28 N. E. 254:

"It is well settled that the acts of executors in respect to the estate of which they are the trustees, which acts may be proper in themselves, may result in an individual liability of such executors, and that in the course of the administration of an estate the acts done by an executor are his individual acts, for which he is individually responsible, although the acts done may relate to the business of the estate."

It is of course evident, and as we understand not disputed, that if this action had been begun by plaintiff solely in its representative capacity, it would have been a proper party defendant in its individual capacity. Is it necessary to transplant the plaintiff individually from its position as plaintiff to a position with the defendants? The Code of Civil Procedure does not require that the parties joined as plaintiffs shall have a common or identical interest in the cause of action. The requirement is that:

"All persons having an interest in the subject of the action and in obtaining the judgment demanded may be joined as plaintiffs, except as otherwise expressly provided in this act." Section 446.

It is quite obvious that in an action for an accounting, in which the object is to ascertain and fix the amount for which the executor or administrator is liable, he has an interest in the subject of the action both individually and in his personal capacity, and in both capacities he is interested in obtaining the judgment demanded. For this reason it is quite common for an executor or administrator to sue in both capacities. Such a joinder puts any defendant who wishes to assert a claim against the administrator in either capacity at no disadvantage. For these reasons, we are of the opinion that the demurrer should have been overruled.

The order appealed from will therefore be reversed, with $10 costs and disbursements, and plaintiff's motion to overrule the demurrer and for judgment upon the pleadings granted, with $10 costs, with leave to defendants to withdraw their demurrer and answer over upon the payment of said costs within 20 days.

INGRAHAM, P. J., and CLARKE, J., concur.

LAUGHLIN, J. (dissenting). The respondent Edmund K. Stallo, who according to the allegations of the complaint claims an interest in moneys and securities in the hands of the Metropolitan Trust Company and was engaged in various joint enterprises or copartership undertakings with the decedent, concerning which there has been no accounting and with respect to which an accounting is demanded in this action, and the respondents Laura McDonald Stallo and Helena McDonald Stallo, who are the sole next of kin of Alexander McDonald, deceased, jointly demurred to the complaint on the grounds that there is a misjoinder of parties plaintiff and that causes of ac-

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 58 Hun, 609.

tion have been improperly united, and on the further ground that the complaint fails to state facts sufficient to constitute a cause of action, either in favor of the Trust Company in its individual or in its representative capacity. There was no decision at Special Term on the demurrer on the ground of insufficiency of the allegations of the complaint, and therefore the questions presented by the grounds of demurrer relating thereto are not presented for review.

I am unable to agree with the views expressed in the majority opinion with respect to either of the two grounds of demurrer therein considered. It appears by the allegations of the complaint that at the time the plaintiff was appointed administrator it owned and was in possession of a promissory note made by the respondent Edmund K. Stallo and by the decedent, by said Stallo as his attorney in fact, dated December 8, 1909, payable on December 8, 1910, for $2,700,000, and held as security therefor $2,138,000 first mortgage bonds of the New Orleans, Mobile & Chicago Railroad Company, $240,000 preferred stock of said company, $1,950,000 common stock of said company, $155.26 bond scrip of said company, $116.10 preferred stock scrip of said company, $68 common stock scrip of said company, and $200,000 par value, of the capital stock of the Standard Oil Company of New Jersey, and that after its appointment as administrator, and while it was the holder and owner of said note, commencing with the summer of 1911, it sold from time to time all of said securities, and that it applied the proceeds of such sales to the payment of said note, and holds a surplus of $454,250.93 in its individual capacity. It is also alleged that on or about the 2d of February, 1912, defendant Brayton Ives delivered to the attorneys for the Trust Company $200,-000, par value, of bonds and 400 shares of preferred stock of the New Orleans, Mobile & Chicago Railroad Company, and $20,000 in cash, which he claimed to own, for and on behalf of the Trust Company "as if deposited with it as additional security" for said note, and the note at that time having been paid, "to be held by it for whomever might be entitled thereto." It is further alleged in substance that in selling said securities the Trust Company acted within its rights as pledgee thereof, and received the best obtainable therefor, and judgment to that effect is demanded. The complaint does not disclose the existence of any controversy between the plaintiff as such pledgee and as administrator with respect to these matters, but proceeds upon the theory that the plaintiff in its capacity as administrator approves of all its acts as such pledgee. It is also alleged, however, that the defendants Harman and Levy claim an interest in the right of defendant Securities Company in the securities so held by the plaintiff as pledgee; that the plaintiff, as administrator, defendant Edmund K. Stallo, and defendant Securities Company make claims to said surplus remaining on said sale of the securities so held by plaintiff as pledgee after the payment of said note; that plaintiff, as administrator, said Stallo, and defendant Ives each claim the securities and cash delivered by said Ives to the attorneys for the Trust Company as stated; that the plaintiff is unable to determine the merits of these conflicting claims without jeopardy to its own interests; and

judgment is further demanded determining the respective claims and interests of said claimants, if any, in and to said funds and securities.

It may be conceded for the purposes of deciding this appeal that the Trust Company, as pledgee, sufficiently shows a cause of action for the relief demanded to the extent stated. It is manifest, however, that there is here stated no cause of action in favor of the Trust Company as administrator, but, on the contrary, a cause of action in favor of the Trust Company as pledgee against the administrator and others. The complaint further shows certain joint ventures or copartnership undertakings on the part of the decedent and Edmund K. Stallo, with respect to which there has been no accounting, and judgment for such an accounting is further demanded; and it is. further alleged that certain bonds, stocks, and other securities, which were pledged as collateral security for notes which the administrator has paid, have come into the hands of the administrator, and are now held by it, and that it has received and now holds other stocks and securities; that Edmund K. Stallo asserts a claim individually to some of these securities, and asserts that others of them belong to the copartnership between him and the decedent; and that some of them were pledged as security for notes of which the defendant Securities Company and others were either makers or indorsers with the decedent and said Stallo, and the plaintiff does not know what interest, if any, Stallo, or the copartnership, have in these securities, or whether the defendant Securities Company has any interest therein; but it is not alleged that the Securities Company has asserted any claim thereto. Judgment is likewise demanded, determining the rights and interests of said Stallo individually, and of the copartnership, and of the Securities Company with respect to these matters.

It is likewise manifest that the facts alleged with respect to these matters do not show a cause of action in favor of the Trust Company, or one in which it is interested, in its individual capacity, but rather two, one for the copartnership accounting, and another to determine conflicting claims to the stocks and securities, both in its favor as administrator, in which it individually has no interest. It therefore seems to me quite clear that there is both a misjoinder of parties plaintiff (see Doyle v. Carney, 190 N. Y. 386, 83 N. E. 37; Case v. N. Y. Mut. Sav. & Loan Ass'n, 88 App. Div. 538, 85 N. Y. Supp. 104; Hart v. Goadby, 138 App. Div. 160, 123 N. Y. Supp. 166; Groh v. Flammer, 89 App. Div. 28, 85 N. Y. Supp. 305; Lawrence v. McKelvey, 80 App. Div. 514, 81 N. Y. Supp. 129; Havana City Ry. Co. v. Ceballos, 49 App. Div. 263, 63 N. Y. Supp. 417; see, also, Arkenburgh v. Wiggins, 13 App. Div. 96, 43 N. Y. Supp. 294, affirmed 162 N. Y. 596, 57 N. E. 1103; Hubbell et al. v. Lerch, 58 N. Y. 237) and a misjoinder of causes of action (see Case v. N. Y. Mut. Sav. & Loan Ass'n, supra; Hart v. Goadby, supra; Johnson v. Phœnix Bridge Co., 197 N. Y. 316, 90 N. E. 953; O'Connor v. Va. Passenger & Power Co., 184 N. Y. 46, 76 N. E. 1082; Cass v. Realty Securities Co., 148 App. Div. 96, 148 App. Div. 1074, affirmed 206 N. Y. 649, 99 N. E. 1105). If McDonald were living, plainly he could not have joined these causes of action, and therefore the cases

of Shepard et al. v. Manhattan R. Co., 117 N. Y. 442, 23 N. E. 30, and Mullin v. Mullin, 119 App. Div. 521, 104 N. Y. Supp. 323, and kindred authorities, do not sustain the complaint.

As I view the case, there is no conceivable theory upon which these causes of action might properly be united in a single complaint. If it be assumed that the action is brought by the plaintiff as administrator primarily to determine the rights and interests of the estate of the decedent in the funds and securities in the hands of the plaintiff as pledgee and as administrator, and for an accounting with respect to the joint ventures or copartnership enterprises, the same difficulty is encountered, for neither the Trust Company, nor the defendants who assert an interest in the funds and securities in its hands individually and as administrator, have any interest in the settlement of the transactions between the decedent and Edmund K. Stallo as joint adventurers or copartners. Nor can the action be maintained on the theory that it is brought by the plaintiff as administrator for a final accounting and distribution of the assets in its hands as such. The complaint contains no appropriate allegations to warrant the Supreme Court in taking jurisdiction and in ousting the Surrogate's Court of jurisdiction, for it is not alleged that all the debts and obligations of the estate have been paid, or that there is no one interested in the estate other than the defendants (see Hart v. Goadby, supra; Bushe v. Wright, 118 App. Div. 368, 103 N. Y. Supp. 403, affirmed 195 N. Y. 510, 88 N. E. 1116; Id., 118 App. Div. 320, 103 N. Y. Supp. 410, affirmed 195 N. Y. 509, 88 N. E. 1116), and while the Supreme Court has jurisdiction concurrently with that of the Surrogate's Court to require an accounting by executors or administrators, its jurisdiction is only exercised to the extent necessary to supplement the jurisdiction of the Surrogate's Court with respect to matters concerning which the latter Court is without jurisdiction (Chapman et al. v. Montgomery et al., 63 N. Y. 221; Borrowe v. Corbin, 31 App. Div. 172, 52 N. Y. Supp. 741, affirmed 165 N. Y. 634, 59 N. E. 1119).

But it is not even claimed that the action is one for a final accounting of the administrator. There is no precedent, and I see no propriety in establishing one, for a partial or intermediate accounting in the Supreme Court *between the administrator and the next of kin,* and therefore the action cannot be maintained for that purpose, and the joinder of these separate causes of action sustained on the theory that they are incidental to such an accounting. Although the Surrogate's Court has full jurisdiction to take or to require an accounting by the administrator, it has not jurisdiction of the causes of action set forth in the complaint with respect to the determination of conflicting claims to said funds and securities and to require the surviving partner or joint adventurer to account to the estate of the decedent. It is therefore both proper and necessary that those causes of action be litigated in a court of competent jurisdiction. They cannot, however, be deemed merely incidental to this action on the theory that it is one for either *a final or a partial accounting* by the administrator. The administrator is not ready to account with respect to the decedent's interest in the copartnership or joint adventurers, or with respect to the funds and

:securities held by plaintiff as pledgee or by it as administrator, and it is the duty of the administrator to collect the assets of the estate by enforcing its rights or having them determined, without joining the next of kin and creditors and calling upon or leaving it to them in their respective individual rights to endeavor indirectly to enforce or to protect the rights of the estate. If this action should be sustained on the theory that it is one for *an accounting by the administrator,* and that all other relief demanded is incidental thereto, and that it is properly brought in the Supreme Court owing to want of jurisdiction in the Surrogate's Court to decide the *incidental* matters, there would be no limit to the number of independent and wholly disconnected equitable causes of action that might be thus joined as *incidental* to an account-ing by an executor or administrator in the Supreme Court, where it becomes necessary to resort thereto before there can be a final account-ing; and the action might be brought at once upon the issuance of letters of administration and without first enforcing or endeavoring to enforce the equitable causes of action in favor of the estate, and by making the creditors and, as has been done here, the next of kin parties, shift or endeavor to shift the burden, which devolves upon the executors or administrators, of proving the causes of action onto the creditors and next of kin, at the risk of being concluded by an adverse decision in an action to which they are parties. If executors and administrators could thus avoid all the responsibility and risk of liability on the settlement of their accounts, such actions would become common, and a very large part of the work designed to be performed by the Surrogate's Courts would devolve on the Supreme Court, and the expenses and delays in the administration of estates would be largely increased. There is no precedent for such an action and none could be established.

McLAUGHLIN, J., concurs.