GEORGE J. GOULD et al., as Executors and Trustees under the Last Will and Testament and Codicils Thereto of JAY GOULD, Deceased, Plaintiffs, *v.* GEORGE J. GOULD, Individually and as Receiver, etc., et al., Defendants.

(Supreme Court, New York Special Term, July, 1919.)

Wills — construction of — accounting — trusts — jurisdiction — when motion to remove trustee granted — Real Property Law, § 112 — Code Civ. Pro. § 768.

Where the whole scheme of a will shows that the testator was expressly insistent that the estate should be divided into six separate trusts and a codicil reiterates the directions that " the said shares, accounts and transactions pertaining thereto shall at all times be kept entirely separate and distinct and shall never be mixed or mingled," the absolute and continued refusal of one of the testamentary trustees, who had the entire estate practically under his control, to carry out such directions, is legal ground for his removal.

Where the compensation of said trustee was fixed at a certain sum by the will which forbade any further compensation, his receipt of a certain sum as a commission and secret profit on the sale of corporate stock belonging to the trust estate and

his retention thereof for eight years without making any mention thereof until a motion was made to remove him as trustee and his refusal to pay interest thereon constitutes a dereliction of duty, and the fact that he paid over to the estate the commission received by him cannot so palliate his original wrongful act in taking it, as to justify the court in either approving or overlooking it.

Where in an action for the construction of the will and an accounting in which all the necessary parties were served with the summons and complaint and all parties appearing in said action having had notice of a motion to remove said trustee and appear thereon, the court has jurisdiction to entertain the motion and where it satisfactorily appears that said trustee, who has continuously mingled the trust funds with his own and used them as if they were his actual property, is either entirely ignorant or boldly defiant of the ordinary principles governing the administration of an estate, the motion will be granted.

The provisions of section 112 of the Real Property Law and section 768 of the Code of Civil Procedure are permissive but not exclusive, and nothing therein prohibits the removal of a testamentary trustee on motion made in an action for an accounting, etc., as the power of the court to act comes from the constitution of the state, which specifically grants it general jurisdiction in law and equity.

MOTION to remove a trustee.

Leonard & Walker (Samuel Seabury and Walter B. Walker, of counsel), for defendant Frank Jay Gould.

Coudert Brothers (Lorenzo Semple and Howard Thayer Kingsbury, of counsel), for defendant Duchesse de Talleyrand (formerly Anna Gould).

Thomas S. Fuller, guardian *ad litem* for infant defendant Helen Margaret Gould.

Walter F. Carter, guardian *ad litem* for infant defendant Dorothy Gould.

William Nelson Cromwell, guardian *ad litem* for Marie, etc., de Castellane, Georges, etc., de Castellane, Charles, etc., de Sagan, Jason, etc., de Castellane, Helene, etc., de Talleyrand, for motion.

Chadbourne, Babbitt & Wallace (William Wallace, Jr., of counsel), for George J. Gould.

Alton B. Parker, for Edwin Gould, individually and as trustee.

Frank Lawrence, appearing specially for Kingdon Gould and Jay Gould.

Stanchfield & Levy (John B. Stanchfield and Siegfried F. Hartman, of counsel), appearing specially for George J. Gould, Jr., and Marjorie Gould Drexel, opposed.

William A. W. Stewart, as guardian *ad litem* of Frank M. Gould, for the motion; as guardian *ad litem* of the infant children and grandchildren of George J. Gould, not opposed to the motion; Frank M. Gould, infant remainderman, opposed.

Helen G. Shepard, by her attorneys, De Forest Brothers, is neutral.

WHITAKER, J.   This is a motion to remove George J. Gould as a trustee under the will of his father, Jay Gould.

Jay Gould died leaving a will which was probated in January, 1893. The provisions of this will, so far as pertinent to the questions involved, are as follows: First, there were specific legacies and bequests made which, it is conceded, have been paid and satisfied. The will then provides as follows:

" *Fifth.* I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal

and mixed, of every name and nature whatsoever and wheresoever situate of which I shall die seized or possessed, or to which I may be entitled at the time of my decease, unto my executrix and executors hereinafter named as trustees, the survivors and survivor of them, in trust for the uses and purposes following, that is to say:

" 1. To hold or sell, convey or dispose of the same at public auction or private sale, at such time or times and on such terms as they or the survivors or survivor of them in their or his or her discretion shall deem advisable.

" 2. To divide said real and personal estate or the proceeds thereof into seven equal parts or shares and to designate, hold and invest one such part or share for my said wife, and to collect and receive and pay or apply the rents, interest and income of the part or share so set apart for my said wife to her for her use during her natural life, and upon her death to pay, assign, transfer and convey the part or share so held in trust for her to such persons and in such proportions as she shall appoint and direct in and by her last will and testament; and in case of her failure to make such testamentary appointment, then to my children then surviving and to the issue of any deceased child share and share alike, *per stirpes* and not *per capita.*

" 3. To designate, hold and invest one other such share for each of my children, George J. Gould, Edwin Gould, Howard Gould, Frank Gould, Helen M. Gould and Anna Gould, and to collect and receive and pay or apply the rents, interest and income from the part or share so set apart for each child to his or her use during his or her life; and upon the death of any of said children to pay, assign, transfer or convey the part or share so held in trust for him or her to his

or her issue in such proportions and at such times as he or she shall appoint in and by his or her last will and testament; and in case of failure to make such testamentary appointment, then to such issue absolutely in the proportions provided in and by the statutes of this state in cases of intestacy.

" 4. In the event that any of my children shall die without issue, then to pay, assign, transfer and convey the part or share of the one so dying to my surviving children and to the issue of any deceased child share and share alike *per stirpes* and not *per capita*.

" *Sixth*. I direct that all securities in which said trust funds shall from time to time be invested be taken and held by said trustees in their name as trustees for the parties respectively for whose benefit the funds are severally set apart and held so that each of the trust funds herein provided for shall be kept separate and distinct from the others, and the accounts thereof shall be separately kept; and I authorize and direct my said executrix and executors and trustees to employ and pay out of the funds of my estate all the clerks and bookkeepers that may be necessary for this purpose.   *   *   *

" *Tenth*. I hereby direct that all stocks, bonds and other securities belonging to me at my decease shall form part of the trusts created by this my will at such values as shall be placed upon them by my said executrix and executors and trustees, but I hereby authorize them, the survivors and survivor of them, to sell and dispose of the same or any of them whenever in their discretion they think proper. And I expressly direct that my executrix and executors and trustees, the survivors or survivor of them, are not to be held responsible or liable for or charged with any loss or depreciation that may arise by holding such securities or any securities forming part of the trust created

hereby; and I hereby empower them, the survivors or survivor of them, to make such investments and reinvestments of the trust moneys in securities other than those in which trustees are authorized to invest by law, in the absence of testamentary direction, as they may think proper; and I further authorize and empower them, the survivors or survivor of them, to call in, change, invest and reinvest the said securities and investments and proceeds thereof whenever and as often as they may deem necessary.

" In the event of any differences of opinion among my executrix and executors and trustees as to the holding and retaining of securities or investments, or as to the calling in or making investments and reinvestments and management of the estate and of the trusts herein created, I direct that so long as they shall be five in number the decision of four of them shall be conclusive, and when and so long as their number shall be reduced to four that then the decision of three of them shall in like manner be conclusive.

" *Eleventh.* I nominate, constitute and appoint my wife, Helen D. Gould; my brother-in-law Daniel S. Miller, my son George J. Gould, my friend Thomas T. Eckert, and my second son Edwin Gould when he shall have reached the age of twenty-one years executrix and executors of and trustees under this my last will and testament; provided, however, and the appointment of trustees in this my will is subject to this exception, that neither of the persons herein named as trustees shall be trustee of the fund, share or portion hereinbefore directed to be set apart and to be held for him or her or for his or her benefit, but as to such fund in the case of each of the beneficiaries who is also made a trustee herein the trust shall vest in and be executed by the others of the trustees herein named and the survivors and survivor of them. * * *

" *Thirteenth.* I desire and direct that in lieu of the commissions provided by statute to be paid to executors and trustees there shall be paid to my said executrix and executors and trustees for their services the sum of ten thousand dollars per annum each so long as they shall respectively act in the capacities aforesaid; provided, however, and said appointments of said executrix, executors and trustees are subject to the further condition, that no commission or compensation shall be charged by or allowed to any of them for their services as executrix, executors and trustees other than as above provided, and if either shall decline to serve on said condition his or her appointment as such executrix or executor and trustee shall cease and terminate."

The first codicil provided for the division of the estate into six instead of seven separate trusts, the wife having died, and specifically confirms the direction that the residuary estate be divided into six separate trusts, and directs that " said shares and the accounts and transactions pertaining thereto shall at all times be kept entirely separate and distinct and shall never be mixed or mingled."

The present trustees are George J. Gould, Helen G. Shepard, Edwin Gould and Howard Gould.

The interested parties who have appeared in favor of the motion are as follows: Frank Jay Gould, life tenant; Duchesse de Talleyrand (formerly Anna Gould), life tenant; Helen Margaret Gould, infant remainderman; Dorothy Gould, infant remainderman; Marie, etc., de Castellane, infant remainderman; Georges, etc., de Castellane, infant remainderman; Jason, etc., de Castellane, infant remainderman; Charles, etc., de Sagan, infant remainderman; Helene, etc., de Talleyrand, infant remainderman.

Those who opposed the motion are as follows:

George J. Gould, trustee and life tenant; Edwin Gould, trustee and life tenant; Kingdon Gould, remainderman; Jay Gould, remainderman; Marjorie G. Drexel, remainderman; George J. Gould, Jr., remainderman; Frank M. Gould, infant remainderman (although his guardian *ad litem* is neutral).

The only other appearance was Helen G. Shepard, who is neutral.

The executorial duties of the trustees have all been performed and completed.

The present action in which George J. Gould, Edwin Gould, Helen G. Shepard (formerly Helen M. Gould) and Howard Gould, as executors and trustees under the last will and testament and codicils thereto of Jay Gould, deceased, are plaintiffs, and all the parties interested in the estate are defendants (in which action this motion is made), was begun in 1916, and asks for an accounting and the approval of the court of all the acts of the executors and trustees and a construction of certain portions of the will. The executors and trustees have administered the estate, which amounted to over $80,000,000, for twenty-three years, and during that entire period have neither accounted nor attempted to account. It is manifest from all the facts before the court that the respondent George J. Gould was in practical control of the management of the entire estate. This of course was a natural consequence of the provisions of the testator's, Jay Gould's, will, which indicated that the testator had great confidence in the judgment, ability, integrity and experience of the respondent, George J. Gould, and as matter of fact the will made him the sole arbiter under certain conditions.

The charges made against the respondent, George J. Gould, by the moving parties are substantially as follows:

1. That George J. Gould has exercised a dominating influence in the management and administration of the property and investments of the estate of Jay Gould, of which he is executor and trustee, and has dictated its policy in all, or nearly all, important matters.

2. That in the management of the estate he has habitually subordinated the interests of the estate, and his fiduciary obligations in respect thereto, to his individual and personal interests.

3. That he has on numerous occasions taken advantage of his powers and opportunities offered to him by his official capacity as executor and trustee of the estate to make individual and personal profits for himself, for which he has not accounted to the estate, and to cause the estate to assume the burden of losses arising out of transactions which he had initiated for his personal account.

4. That he has conducted speculations in securities in which the estate was interested in such a manner that when there was a profit he could and frequently did take it for himself, and when there was a loss he could and frequently did cause such loss to be assumed by the estate.

5. That he has failed to exercise common prudence and diligence in making and keeping investments for the estate; that he has invested large portions of the estate in securities of a highly unsafe, speculative and non-productive character and has kept such investments when he might and should have disposed of them, often for the purpose of serving some personal interest of his own and frequently resulting in great loss to the estate, both of principal and income.

6. That he has willfully and intentionally disregarded the interests of the life beneficiaries by investing large amounts of the funds of the estate in

non-income producing securities and by keeping such investments for long periods of time.

7. That through his dominating influence in the management of the estate he is principally responsible for the failure of the executors and trustees to divide the estate into separate shares as directed by the will.

8. That he has habitually abused the discretion and powers intrusted to him by the testator for his own individual and personal benefit.

9. That he has failed to keep proper, sufficient, intelligible and correct accounts of the trust estate.

10. That he has mingled the estate funds and transactions with his own and has destroyed a large number of his own records and accounts, whereby the facts in regard thereto might appear.

11. That he has shown by his conduct, his accounts and his testimony that he has no adequate realization of the duties and obligations of a fiduciary.

It is also claimed that he made false quarterly statements to the parties interested in the estate for the purpose of deceiving them and that he is unfit to administer the estate intrusted to his care by reason of his dishonest actions, ignorance of his duties as trustee and abuse of discretion, through which the estate has lost some millions of dollars.

There are a large number of specific instances of wrongdoing set forth in the moving papers tending to prove the above allegations and which set forth the most intricate, complicated and involved stock and bond transactions, amounting to vast sums of money, some of which it is alleged in the moving papers resulted in large secret profits to George J. Gould personally which were never turned into the estate and in which the property of the estate was used, and some of which resulted in losses, which losses were charged to the estate.

Supreme Court, July, 1919.      [Vol. 108.

It is practically impossible to unravel and see completely through this apparent legerdemain of finance by the aid only of affidavits. Suffice it to say that while most of the transactions themselves are admitted, the wrongfulness of them is either denied or attempted to be explained in such a way as to excuse George J. Gould of any violation of his duties as trustee; and although the evidence preponderates against George J. Gould's denials and attempted explanations, concerning some of these charges, inasmuch as these matters are controverted, the court will not pass upon them nor base its determination on them in this motion.

There are, however, three specific charges of dereliction of duty and abuse of trust that are admitted and indisputably proven.

The first of these charges is the failure of the trustees to divide the estate into six separate trusts.

The will contained specific and mandatory provisions that this should be done. The whole scheme of the will shows that the testator was especially insistent upon this direction. This is accentuated by the fact that subsequent to making the will his first codicil again reiterates the direction in most positive terms that " the said shares, accounts and transactions pertaining thereto shall at all times be kept entirely separate and distinct and shall *never* be mixed or mingled."

The trustees have entirely ignored this positive provision of the will. By thus doing, it is claimed, the respondent, George J. Gould, was able to enter into the financial transactions above referred to. All the papers submitted show that he has had the entire estate practically under his control. The failure to create the six separate trusts was in direct defiance of the most positive directions of the testator, it tended to violate the statute against perpetuities and defeated

the entire plan of the testator in the distribution of his estate. It deprived and continues to deprive each beneficiary of the protection and security which would have followed the separation of his or her fund.

The creation of the separate trusts would have avoided the loss of one of the trusts being borne by the others. It would have avoided the anomalous position of a trustee being also the beneficiary. It would have prevented the use of the entire estate in individual business enterprises, and would have enabled each beneficiary to know approximately the extent of his or her interest.

It would seem unnecessary to cite judicial authorities to sustain the determination that the absolute and continued refusal of a testamentary trustee to obey the proper expressed directions of the testator is legal ground for his removal. The trustee is appointed expressly for that purpose, and when he persistently and intentionally refuses to perform the very purpose for which he is appointed and acts directly contrary to that purpose he should not be allowed to remain as trustee.

There is, however, judicial authority holding that the refusal or neglect of a testamentary trustee to follow the legal instructions of the testator is ground for removal. *Matter of Hoysradt,* 20 Misc. Rep. 265; *Widmayer* v. *Widmayer,* 76 Hun, 251; *Matter of Havemeyer,* 3 App. Div. 519.

There is no valid excuse nor justification shown in the papers for the failure and continuous refusal of the trustees to obey the express instructions of the testator to divide the estate into six separate trusts.

There is another charge against the trustee, George J. Gould, which does not relate to failure or neglect to carry out the directions of the will, but relates to

Supreme Court, July, 1919.    .    [Vol. 108.

an alleged wrongful affirmative act on the part of George J. Gould.

The facts which constitute the alleged wrongful act are conceded, but the wrongfulness of the act is denied, and the conduct of George J. Gould in relation thereto is sought to be justified. The facts concerning this alleged wrongful act are substantially as follows: In the early part of June, 1909, the estate owned 210,-028 shares of the capital stock of the Western Union Telegraph Company. Thomas L. Chadbourne, who was in the employ of George J. Gould, and who was his attorney, and who acted as his agent in the transaction, negotiated, at the sole request of George J. Gould, a sale of this stock at $75 a share, and the purchaser agreed in consideration of getting 29,000 shares, to pay a bonus of $10 a share, making the price to the purchaser $85 a share. The shares of the Goulds which were sold were held as follows: Estate of Jay Gould, 210,028; George J. Gould, individually, 7,823; Edwin Gould, individually, 10,300; Frank J. Gould, 901.

This made up the 229,052 shares which were sold by Thomas L. Chadbourne at the request of George J. Gould.

This stock was delivered and paid for by the purchaser, and George J. Gould received the money for the estate stock. Thomas L. Chadbourne, the agent of George J. Gould, received a commission from the purchaser of $3.50 on each share bought by him. The total amount of this commission on the shares held and which were owned by the estate was $735,098. This commission was paid by Thomas L. Chadbourne to George J. Gould, who thereafter returned to Thomas L. Chadbourne the sum of $125,000. George J. Gould received from this transaction $620,401.71 as a commission and secret profit on the sale of the stock

belonging to the estate of which he is trustee. This profit was received in April, 1909.

George J. Gould kept the sum of $620,401.71 as his own for a period of eight years and made no mention of it. Not until after this action had been begun and the facts alleged in the answer of the defendant Frank J. Gould disclosed the transaction did George J. Gould pay over this commission to the estate, and even then he paid no interest, and even now positively refuses to pay any interest, notwithstanding he has had the money for a period of eight years.

Helen G. Shepard was never consulted concerning the sale of the Western Union Telegraph Company stock and had no knowledge of the transaction.

The repayment of this sum to the estate by George J. Gould, after having retained it for eight years, furnishes no justification or excuse. *Matter of Havemeyer, supra.* This repayment was only made when the facts were disclosed by Frank J. Gould and were set up in his answer as a ground for relief. The repayment was made after discovery of the wrong by those whose interests were adversely affected and eight years after George J. Gould received the money. This belated restitution under pressure or apprehension of adverse proceedings does not so palliate the original wrong as to justify a court of equity in approving or overlooking it. It was not regret for or recognition of the wrong itself that caused restitution; it was the discovery of the wrong by others that seemed to awaken the trustee's conscience.

The trustee, George J. Gould, aided by his counsel, seeks to justify this transaction as a legal, ethical and proper act. A number of cases are cited by counsel, none of which, however, in the opinion of this court, justify the respondent, even though he has returned the money. The rule laid down by the Appellate Divi-

sion of the Supreme Court in *Pyle* v. *Pyle,* 137 App. Div. 568; affd., 199 N. Y. 538, is directly applicable, and is as follows: " It is a fundamental rule relating to the acts of a testamentary trustee that he must not only act for the benefit of the trust estate, but also in such a way as not to gain any advantage, directly or indirectly, except such as the law specifically gives him, for himself. He owes an undivided duty to his beneficiary, and he must not under any circumstance place himself in a position whereby his personal interest will come in conflict with the interest of his *cestui que trust.*"

A trustee must act in good faith and will not be permitted to use his trusteeship for his individual advantage, benefit or profit. *Getty* v. *Devlin,* 70 N. Y. 504; *Bosworth* v. *Allen,* 168 id. 157.

The compensation of George J. Gould as trustee is fixed by the will at $10,000 a year and probably the special legacy of $5,000,000 was taken into consideration in determining the amount of such compensation. The $10,000 was all the money George J. Gould was entitled to receive as trustee each year, and that sum was to be his compensation for the management of the estate, and the will forbids any further compensation.

It is also further conceded that George J. Gould has continuously mingled the trust funds with his own funds and used them as if they were his individual property. As matter of fact, he has stated under oath that he considered that he sustained toward the estate funds and property a debtor and creditor relation, and that he so acted.

The foregoing admitted negative and affirmative acts, in the opinion of this court, not only justify but require a court of equity to summarily remove the trustee guilty of and primarily to blame for them. Especially is this true when the trustee not only justi-

fies but also maintains that such negative and affirmative acts are in no way a violation of his duties as trustee, and in his prayer for relief in his action for an accounting he specifically requests the court to confirm and approve these improper acts.

The only inference to be drawn from this position taken by the trustee is that he is either entirely ignorant or boldly defiant of the ordinary principles governing the administration of trust estates. And the interests of *cestui que trusts,* and especially the infant remaindermen who are particularly under the protection of the court, demand that George J. Gould should be removed as testamentary trustee.

The question has been raised, however, by way of preliminary objection, and vigorously maintained by oral argument and voluminous briefs, that this court has no jurisdiction in this action to remove the respondent by means of this motion.

The preliminary objections to the right of the court to entertain this motion are as follows:

" 1.      *      *      *

" 2. That this proceeding was improperly commenced by an order to show cause directed *only* to George J. Gould."

The answer to this contention is that George J. Gould is the only trustee whose removal is sought.

" 3. That the parties necessary to a proceeding for the removal of an executor and trustee are not before the court, because

" a. No proper service of the papers was made on any of the necessary parties other than the respondent executor and trustee, and

" b. No attempt was made at service on certain of the necessary parties."

In answer to this objection and its subdivisions it is only necessary, in the court's opinion, to state that the

motion is made in a pending action, in which action all the necessary parties were served with the summons and complaint and that all the parties who appeared in this action have had notice of this motion and have actually appeared and are before the court.

Those who did not appear in this action but defaulted are Lady Decies (formerly Vivien Gould), a daughter of George J. Gould and a remainderman, who is not within the jurisdiction of the court and who has not been served with notice of this motion, and Marjorie G. Drexel, also a daughter of George J. Gould and a remainderman; her attorneys, however, have appeared " specially."

As before stated, all the parties that were defendants in the action, with the exception of Lady Decies and Marjorie G. Drexel, have actually appeared on this motion. Inasmuch as these two defendants did not appear in the action, although legally served with process, and this motion being one brought in the action, it was not necessary, in the opinion of the court, to serve them with a notice of this motion. Moreover, they are the daughters of the trustee whose removal is sought. Had the respondent obeyed the express instructions of the will and divided the estate into separate trusts they would have had no interest in this motion because the respondent would not have been a trustee of the fund in which they had an interest. By raising the question he is really trying to take advantage of his own wrong. The presence of neither of them is necessary to a complete determination of this motion nor its enforcement. Ample justice can be done to these parties without affecting their interests injuriously (16 Cyc. 190), the motion being to protect their interests and to remove and not to appoint a trustee.

" 4. That the moving papers show that George J.

Gould has not ceased to act as executor under the will, and that the Supreme Court has no jurisdiction to revoke his letters testamentary, a matter which is within the exclusive jurisdiction of the Surrogate's Court.''

This objection is, in the opinion of the court, based upon a mistaken statement of fact and an incorrect conclusion of law.

The complaint itself shows that all the executorial duties have been completely performed, and George J. Gould is now actually acting as trustee, and has been for years, and not as executor, except in name. There was no necessity of a decree separating his duties as executor and trustee. *Matter of Kellogg,* 214 N. Y. 460. Having brought this action in the Supreme Court, George J. Gould cannot object to its jurisdiction, which is concurrent with the jurisdiction of the Surrogate's Court. *Sanders* v. *Soutter,* 126 N. Y. 193; *Ludwig* v. *Bungart,* 48 App. Div. 613.

Counsel states his main point in opposition to this motion as follows: '' This court can remove George J. Gould as testamentary trustee because of his alleged misconduct or unfitness only in an action or special proceeding brought for that purpose, and cannot remove him by an order made on motion in this action for a construction of the will and an accounting.''

The statute relied upon to support this contention is section 112 of the Real Property Law, which, so far as it is material to the question under discussion, provides as follows:

'' Section 112. Resignation or removal of trustee and appointment of successor. The supreme court has power, subject to the regulations established for the purpose in the general rules of practice:

'' 1  *  *  *

"2. In an action brought or on a petition presented, by any person interested in the trust, to remove a trustee who has violated or threatens to violate his trust, or who is insolvent, or whose insolvency is apprehended, or who for any other cause shall be deemed to be an unsuitable person to execute the trust."

Section 768 of the Code of Civil Procedure provides as follows:

"Any proceeding which is required by statute to be instituted by petition may also be instituted by an affidavit setting forth the matter which it is required that the petition shall contain, accompanying a notice of an application for the relief which would properly be prayed for in the petition: * * *."

In view of these provisions the only question is as to the power of the court to grant the relief asked for in this motion. It is conceded by respondent that if this proceeding had been by petition, instituted as an independent and separate proceeding, there would have been no question as to the power of the court.

The distinction is certainly very fine and technical. The same parties and the same facts are before the court upon this motion that would have been before the court upon a separate, independent proceeding. The court has acquired complete jurisdiction over the parties and the subject matter.

The provisions of the statute are not exclusive. They are permissive. There is nothing in the statute prohibiting the removal of a testamentary trustee by motion in an action for an accounting, etc.

The court does not derive its power to remove a testamentary trustee from this statute, as is claimed by counsel for the respondent. The court's power comes from the Constitution, which specifically grants it.

"General jurisdiction in law and equity" is given by the Constitution, and the power to remove a testa-

mentary trustee is peculiarly an equitable power which has always been exercised by the English Court of Chancery and the Supreme Court of this state. This power cannot be limited by the legislature. 79 N. Y. 582, 590.

The court unquestionably has power to remove the respondent as testamentary trustee upon the trial of this accounting action, if in the opinion of the court the actions of the trustee require it (*Carrier* v. *Carrier,* 226 N. Y. 114), and the court should exercise that power in the present case in advance of the trial (which may not take place in a very long time), if in its judgment the admitted facts require such removal for the proper preservation of the trust estate. *Matter of Fernbacher,* 17 Abb. N. C. 339; *Matter of Mallon,* 38 Misc. Rep. 27.

Counsel for respondent in their brief lay great stress upon two injurious consequences that will result to the respondent should the court determine that the relief sought may be had by means of this motion. *First,* " the right of the trustee to be heard in open court and to adduce common law evidence on the disputed questions of fact," and, *second,* " the right to appeal from an order of the Appellate Division to the Court of Appeals."

In answer to the first alleged injurious consequence it is only necessary to state that the respondent has been fully heard, and the facts which this court holds are sufficient to require the removal of the respondent are admitted. No further evidence is required.

Moreover, in a proceeding by petition under the statute the facts would be submitted in the form of affidavits. *Matter of Warren,* 125 App. Div. 169, 172; *Matter of Keller,* 142 id. 454.

In so far as the right to appeal is concerned, either

party has a right to appeal to the Appellate Division from either the granting or denial of the motion.

It does not seem necessary to argue the proposition that the action of the court should not be determined or controlled by the Code provision in regard to the right of the parties to appeal to the Court of Appeals.

There is an action pending in which the respondent is a plaintiff as trustee and all interested parties are defendants, all of whom have been duly served with process and have appeared, with the exception of two who are in default.

All the infants have appeared by guardians duly appointed, who almost unanimously request the removal of the respondent, as above stated. It is admitted and the court has found that the respondent trustee has failed to do and has done things which, for the preservation of the estate, requires his removal. All necessary parties are not only actually before the court, but they have been fully heard. They are, it is true, before the court by means of this motion instead of a separate proceeding.

It is claimed by the respondent's attorney that there is no precedent for removing the respondent trustee by means of the present motion, and by reason of there being no precedent, he contends that notwithstanding all the necessary parties are before the court and have been fully heard and that the issues and evidence are exactly the same as though the parties had been brought in by means of an action or independent proceeding, the court, nevertheless, has no jurisdiction to remove the respondent by motion. While the court thinks there is precedent for the removal of the respondent by means of this motion, even assuming that there is no direct precedent, the fact that the court has heretofore failed to exercise a power is neither an argument nor presumption against the

existence of such a power.　A court of equity will not refuse to exercise a power simply because there may be no judicial precedent for its exercise.

In *People* v. *Norton,* 9 N. Y. 176, the court, speaking through Ruggles, Ch. J., said: " The court of chancery had general jurisdiction of all cases of trust; and had the power by its general authority, independent of any statute, to displace a trustee on good cause shown. \* \* \* It is said that this must in all cases, according to the course and practice of that court, be done by bill and not upon petition. *But a departure from the usual practice of the court in doing an act which the court has authority to do, does not render the act void."*

In *Youngs* v. *Carter,* 10 Hun, 194, Mr. Justice Daniels, in discussing the equitable jurisdiction of the Supreme Court, said: " \* \* \* it now extends to all cases of law and equity by virtue of the provision of the Constitution \* \* \*. The authority given, in terms, is ' general jurisdiction in law and equity,' and that, of necessity, includes all cases which may be properly comprehended by established and existing equitable principles. *The test of jurisdiction cannot be restricted to the existence of some definite precedent* for the action which may be brought. That would destroy the flexibility required to maintain the utility of the court, in the demands necessarily made for the exercise of its authority in new cases always arising out of the enterprises and progress of society. The novelty of the case can form no well-founded objection to the jurisdiction over it, if it falls within the limits of any defined equitable principle. That must constitute the test of the court's authority, and not the existence or absence of precedent for the case over which it may be invoked."

Mr. Justice Follett, in *Davis* v. *Zimmerman,* 91

Hun, 489, restated the same principle, and said: " The Supreme Court of this State has original and general jurisdiction of all cases in law and equity * * * with unlimited power to protect the rights of persons and property by adopting and enforcing all of the remedies afforded by an enlightened jurisprudence which are not inconsistent with the Constitution of the State, *and it is its privilege and duty to mould and expand its processes* so as to afford adequate protection to the rights of all citizens."

It is not only, therefore, the opinion of the court that it has ample power to remove the respondent trustee by means of this motion, but it is also the opinion of the court, that inasmuch as the court has acquired plenary jurisdiction of the parties and the subject matter through the action for an accounting, in which action power of removal is incident and ancillary, that the court would and should actually restrain the prosecution of any separate proceeding instituted for that purpose. Such proceeding would come clearly within the sound and sensible rule that if full relief can be had in one suit, no other shall be allowed. *Groshon* v. *Lyon,* 16 Barb. 461; *Foote* v. *Bruggerhof,* 84 Hun, 473; *Metropolitan Trust Co.* v. *Stallo,* 166 App. Div. 649.

Reducing the objections and demands of the respondent trustee to a minimum, the real substance of them is that, notwithstanding all necessary parties are in the court and have been heard, they should nevertheless be driven out simply because they entered through the wrong door.

In conclusion the court desires to say that the affirmative acts alleged against George J. Gould do not involve the co-trustee, Helen G. Shepard. She evidently knew little of the very complicated transactions carried on by George J. Gould, and trusted

him absolutely, as an honest woman with an unsuspecting mind would naturally trust a brother in whom their father had imposed such implicit confidence.

There have been other questions raised and discussed by the parties at great length. While these questions have been considered, they are, in the opinion of the court, incidental and subsidiary to the main question. To discuss them would serve no practical purpose.

The motion to remove George J. Gould as one of the trustees of the estate of Jay Gould is granted, and an order to that effect may be entered.

Motion granted.