INGRAHAM, J.
All the beneficies under the will of Mary J. Havemeyer, deceased, united in a petition to the surrogate asking that letters testamentary issued to J. Lee Humfreville be revoked, and that he be removed as executor and' trustee under the last will and testament and codicils thereto of Mary J. Havemeyer, deceased. Annexed to this petition is an affidavit by Edward Kent, who has been appointed as executor and 'testamentary trustee in the place of Agnes J. Burnham, a daughter of the testatrix, in which is set forth the condition of the estate as he found it upon being appointed such executor and trustee, and the proceedings of the respondent; and in which affidavit he states.
“ In my opinion, the only way in which the estate can be protected, the provisions of the will carried out, and the interests of the beneficiaries subserved, is by the prompt removal of Mr. Humfreville as executor and trustee under the will of the deceased.”
In this case every one connected with the estate as benefiiciary, together with the attorneys for those interested and his co-executor and co-trustee, unites in stating that the interests of the estate imperatively demand the removal of the responpent; and an examination of this record shows that the relation of the respondent to his co-trustee and to the beneficiaries of the estate is such that his 'continuance as trustee will involve the estate in much needless litigation, and' considerable expense. It is quite true that this alone would not justify the removal of the trustee. .But when this condition of hostility between those interested in ail estate and its trustee exists, it becomes material to determine whether the feeling of hostility has been caused by an honest endeavor on the part of the trustee to carry out his trust and perform his duties in opposing the wishes of the beneficiaries for an illegal and imoroper disposition of the trust funds, or whether it has been caused hy an attempt of the trustee to manage the estate in a manner not authorized by law, or by the will of the testator, from whom he received his authority to act. If the latter appears, we think that the interest of those concerned in the estate require *660 that the trustee should make way for one who will manage the estate according to the rules prescribed for the management of such estates, and who will act in sympathy with the beneficiaries, rather than in hostility to them. The claim of the respondent that the hostility }shown arises solely from the prejudice against him entertained by Mr. Burnham and existing at the time of the testatrix’s death, would seem to be unfounded. Mr. Burnham was a son-in-law of the testatrix, and by the will was excluded from receiving an appointment as trustee; and it might be that his feeling towards the respondent had been the cause of his hostility and that of his wife and children. But his feeling could hardly have influenced the conviction of all the others interested in the estate, including the attorneys who have represented the parties interested in the estate, and the new trustee appointed in place of Mrs. Burnham, the testatrix’s daughter. This is especially true of Mr. Kent, who was appointed by the court a co-trustee, whose only interest seems to be a proper execution of the trust. The affidavit of Mr. Kent, made a part of the moving papers, details the grounds of his opposition to the respondent, and is entitled to much weight in determining whether or not the rights of those having a beneficial interest in having the estate properly administered require 'the removal of the respondent. It appears to us that that affidavit, taken 'in connection with the explanation of the respondent, shows gross irregularities in the management of the estate by the respondent, calling for emphatic condemnation. In addition to the three express charges made against the respondent, which will be noticed hereafter, the papers show that the respondent has constantly violated the express provisions of the will. The will contained the - following provision:
“And directing them [the trustees] in all things to acts jointly, keeping all bank accounts in their joint names, in which all moneys received from my estate shall be deposited, and all disbursements made therefrom withdrawn by check, signed by both; and no investment, sale, lease, or other change in my estate shall be made except by the concurrence of both my executors and trustees for the time being.”
That this provision was frequently violated by the respondent is conceded, accounts béing opened in his own' name, moneys invested by himself alone without the consent of his co-trustee, and changes made in the estate without her concurrence. The excuse offered by the respondent for this violation of the will, namely, that his co-executor and trustee refused to unite with him in the acts that he considered necessary for the protection of the estate, might be a reason for removing one or both trustees, but certainly is no excuse for a violation of the express directions contained in the will as to the manner iti which the trust should be performed. In considering this general charge against the respondent, it is only necessary for us to say that an examination of this record has satisfied us that the general conduct of the respondent towards his co-trustee and the beneficiaries entitled to the estate, and his management of 'the affairs and property of the estate, has been arbitrary and oppressive, in violation of his duty as trustee and of *661 the express directions contained in the will as to the management of the trust property. This conclusion is much strengthened by the three specific instances adduced by the appellants in which the respondent illegally appropriated or attempted to appropriate the property of the trust estate.
The first is the withdrawal by the respondent from the Holland Trust Company of the sum of $7,000 by a check to his own order on the 4th day of Movember, 1891. In considering this charge, it is proper to notice the apparent claim of the respondent that, as the petition alleges that he applied this money to his own use, that charge must be considered as in the nature of a criminal indictment and that it must be either proved in its entirety or not considered at all in determining whether or not the respondent is a proper person to remain trustee of the estate. This position is certainly a remarkable one to be urged upon an application of this character. We are here considering the question as to whether or not the action of the trustee in relation to the administration of the trust confided to him is such as to require that he should be removed, not as to whether or not he has committed a crime; and the fact that the charge as made is somewhat broader than the proof would justify is certainly no reason for saying that the facts proved should not be considered in determining the question as to the propriety of the removal of the trustee. Mor is the charge at all answered by the fact that, after these proceedings were commenced, the amount was illegally withdrawn was returned by the respondent to the estate. The question is whether he did in fact illegally withdraw a part of the property of the estate; and to that question there can be but one answer. By the respondent’s answer it appears that in the month of February, 1891, he- received \ the proceeds of the sale of Mo. 175 Pearl street, and on that day, in violation of the express terms of the will, he opened an account in the Holland Trust Company in his own name as executor, and thereafter deposited in such account all moneys of the estate received by him, and drew thereupon, by checks signed by him as executor, moneys to pay the current expenses of the estate. Subsequently, on the 4th day of Movember, understanding that the trust company was in difficulties, he picked up in the trust company a blank check, filled it up for $7,000, had it certified, and took it to his office, and put it in his safe; that on the same day, or shortly afterwards, he loaned said sum of $7,000 to one W. A. Storms on call, secured by first mortgage bonds of a railroad company as collateral; that thereafter he continued loaning such sum in the same way until March 1,1892, when $1,000 of said sum was repaid and redeposited in said trust company, but that he continued to loan said $6,000 in the same way until after the commencement of these proceedings. This is the respondent’s own account of this transaction, and he thereby violated the rules of law prescribed for the investment of trust moneys, and the express provisions of the will under which he was' acting. The opening of the account in his own name was itself a violation of the direction contained in the will. His withdrawing that money and loaning it without the knowledge or con *662 sent of his co-trustee was an illegal interference with the funds of the estate, entirely unjustified by any condition of the affairs of the estate, and without the slightest excuse. Although his explanation of the transaction may well be viewed with considerable suspicion, yet, accepting it as true, his acts were entirely unauthorized and illegal, while his unfortunate loss of the check, the fact of its not being entered in the check book, and his failure to produce an affidavit of a single person to whom he had loaned money, when he was directly charged with having appropriated it to his own use, might well be regarded by the appellants as a justification of their suspicion that this statement in regard to call loans was an afterthought to cover up the respondent’s appropriating to his own use the property of the estate.
The second specific charge against the respondent—of endeavoring to induce his co-executor to place in his hands the sum of $3,000—is an additional proof, of his management of the estate in violation of the directions contained in the will for its management.
The third charge, admitted by the respondent to be true, is that he has appropriated $1,400 of the estate to his own use for commissions that have not been allowed him, and is a direct admission that he has appropriated to his own use this $1,400 belonging to the estate, without legal authority.
The investment of the money of the estate in the second mortgage bonds of the Ohio Southern Railroad Company was an investment entirely unauthorized by law, and for which there is no possible excuse, and the relation of the respondent to that railroad, with his inability to say whether or not he himself sold the bonds to the estate, confirms the conclusion that he is not a proper person to be trustee of this estate.
A further discussion of the acts of this respondent as executor and trustee would serve no good purpose. It is sufficient to say that upon all the testimony, and giving to the respondent the full effect of 'his explanation of his acts, we are satisfied that he has repeatedly violated the rules as to the management of estates by executors and trustees, by making improper investments of the property of the estate, by violating the express provisions of the will under which he was appointed, and by his general conduct towards the beneficiaries and those interested in the estate, entailing considerable loss upon the estate, and making a proper execution of the trust difficult and expensive so long as he remains executor and trustee, ' Under subdivision 2 of section 2685 of the Code of Civil Procedure, the surrogate is authorized to revoke letters testamentary issued to an executor, “where by reason of his having wasted or improperly applied the money or other assets in his hands, or invested money in securities unauthorized by law, or otherwise improvidently managed or injured the property committed to his charge; or by reason of other misconduct in the execution of his office, or dishonesty, drunkenness, improvidence, or want of understanding; he is unfit for the due execution of his office.” By section 2817 the surrogate is authorized to remove a testamentary trustee where, for the same reasons, it appears that *663 he is - unfit for the due execution of his trust. And we think, upon the undisputed facts appearing in this record, this respondent is shown to be unfit for the due execution of his trust, either .as executor or trustee, and that the application should have been .granted.
The decree appealed from is therefore reversed, and the motion granted, removing the respondent as 'trustee, and revoking the letters issued to him as executor, with costs of appeal and motion to ¡the appellants.
All concur.