GEORGE J. GOULD and Others, as Executors and Trustees under the Will of JAY GOULD, Deceased, Plaintiffs, *v.* GEORGE J. GOULD, Individually, and Others, Appellants, Impleaded with GEORGE J. GOULD, as Receiver of the Surplus Income of DUCHESSE DE TALLEYRAND, and Others, Defendants, and FRANK JAY GOULD and Others, Respondents.

First Department, December 22, 1922.

Trusts — action by testamentary trustees for judicial settlement of accounts — motion for removal of one trustee — Supreme Court does not have power to suspend testamentary trustee during pendency of action — court has power to remove on motion though removal not asked for in complaint or answer — division of commissions on sale of trust property between trustee and agent making sale, speculation by trustee with moneys of estate, and other irregularities justify removal — knowledge of acts by adult beneficiaries no defense where rights of infants involved.

The Supreme Court does not have power to suspend a testamentary trustee during the pendency of an action instituted for the judicial settlement of the trustees' accounts, on a motion made in the action, but it does have power to remove the trustee on a motion so made where the facts justify his removal, though his removal is not asked for either in the complaint or the answer.

A testamentary trustee should be removed as unfit to perform the duties of his office, where it appears that on a sale of some of the trust property the agent making the sale divided his commissions with the trustee and that the trustee did not return his share to the estate for several years and then without interest; that he mingled trust moneys with his own and speculated with trust funds, and that he destroyed his personal books, papers and records in which the transactions were recorded.

The fact that some of the adult beneficiaries may have had knowledge of the acts of the trustee and that the enjoyment of the interest vested in infants may be remote, affords no excuse for the failure of the court to act promptly to conserve the trust.

SMITH and FINCH, JJ., dissent, with opinion.

APPEAL by the defendants, George J. Gould and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 14th day of July, 1919, removing said George J. Gould, as trustee under the will of Jay Gould, deceased.

*John W. Davis* of counsel [*William Wallace, Jr.*, with him on the brief], for the appellant George J. Gould.

*Edgar T. Brackett* of counsel [*J. Arthur Leve, George J. Gillespie* and *Harold Content* with him on the brief; *Stanchfield & Levy*, attorneys for George J. Gould, Jr., and Marjorie Gould Drexel;

*Gillespie & O'Connor*, attorneys for Kingdon Gould; *Griffiths, Sarfaty & Content*, attorneys for Jay Gould], for the other appellants.

*Samuel Seabury* of counsel [*Walter B. Walker* with him on the brief; *Leonard & Walker*, attorneys], for the respondent Frank J. Gould.

*Philip L. Miller* of counsel [*William Nelson Cromwell*, attorney for the infant respondents, Charles Maurice Jason Howard Duke de Sagan and others; *Sullivan & Cromwell*, attorneys for the respondents M. L. J. J. G. P. E. B. de Castellane and another], for the respondent remaindermen.

*Frederic R. Coudert* of counsel [*Howard Thayer Kingsbury* with him on the brief; *Coudert Brothers*, attorneys], for the respondent Duchesse de Talleyrand.

*William A. W. Stewart* of counsel, guardian *ad litem*, for the respondents Gloria Gould and others.

PAGE, J.:

The court is agreed upon the power of the court at Special Term to remove a testamentary trustee upon a motion made in an action brought by trustees for a judicial settlement of their accounts, and also that the record disclosed facts sufficient to require drastic action by the court. We differ only in this, that the majority of this court are of opinion that the admitted and uncontroverted facts fully justified the decision of the justice at Special Term that George J. Gould should be removed as testamentary trustee of the trusts created by the last will and testament of Jay Gould, while the minority are of opinion that he should have been suspended pending the action.

In my opinion the court cannot suspend a testamentary trustee. The Surrogate's Court is given power to remove a testamentary trustee. (Surr. Ct. Act, § 99; Code Civ. Proc. § 2569.) No power is granted to suspend such a trustee. Likewise the Supreme Court is given broader powers to remove a trustee and appoint his successor. (Real Prop. Law, § 112.) No provision is made for his suspension. The reason for this is apparent. If a trustee is deprived of his power to execute the trust, its execution devolves upon the Supreme Court, which can only discharge the duty of administration through the appointment of a successor trustee or receiver. Furthermore the court should not take such drastic action unless it clearly appears that the trustee has violated or threatened to violate his trust, or unless for any other cause he shall be deemed to be an unsuitable person to execute the trust. (Real Prop. Law, § 112.) If it does so clearly appear that he is unsuitable,

he should be removed. If it does not clearly appear, he should be allowed to remain as a trustee. There can be no middle ground. The question must be determined on the facts proved on the application for the removal. If they are not sufficient, in my opinion it is improper to suspend *pendente lite*, upon the theory that more persuasive proof may be presented later or that the trustee may be able, on the trial of the issues, to produce proof exonerating him from the charges. If he did not have such an opportunity afforded upon the motion, then it should have been denied.

In the present case there were sufficient facts admitted by the trustee to show that he was an unsuitable person to execute the trust, and to justify the order for his removal. We will not discuss many of the facts presented by the voluminous record. A few of the more prominent derelictions will be sufficient.

In considering the transactions of this trustee with the property, it is well to have in mind what was said by this court in *Pyle* v. *Pyle* (137 App. Div. 568, 572; affd., 199 N. Y. 538): " It is a fundamental rule relating to the acts of a testamentary trustee that he must not only act for the benefit of the trust estate, but also in such a way as not to gain any advantage, directly or indirectly, except such as the law specifically gives him, for himself. He owes an undivided duty to his beneficiary, and he must not, under any circumstances, place himself in a position whereby his personal interest will come in conflict with the interest of his *cestui que trust.* [Citations.] The purpose sought to be secured by this rule of law is to require a trustee to assume a position where his every act is above suspicion and the trust estate, and it alone, can receive not only his best services, but his unbiased and uninfluenced judgment. When he has acted otherwise, or when he has placed himself in such a position that his personal interest has or may come in conflict with his interest as trustee, then, so far as I have been able to discover, the court never hesitates to remove him. Under such circumstances the court does not stop to inquire whether the transactions complained of were fair or unfair."

The trustees of the estate of Jay Gould held 210,028 shares of the stock of the Western Union Telegraph Company of the par value of $21,002,800. As of the date of April 29, 1909, said shares of stock were sold by a majority of the said trustees to one Winsor, who acted for the American Telephone and Telegraph Company, for $85 per share. This sale had been negotiated by an attorney employed for the purpose by George J. Gould, whether individually or as trustee does not appear. The agreement for the sale of said shares required that the trustees, together with certain other

persons, should deliver to the purchaser 229,000 shares, and made provision for the subsequent acceptance of further shares at the same price from other persons, including Helen Gould Shepard, who was not informed of, or consulted as to, the sale of the shares of the trust estate at the time, although she was one of the trustees. As a part of the negotiation, and prior to the delivery and payment for said shares of the estate, the attorney entered into a written contract with Winsor, acting for the American Telephone and Telegraph Company, to pay him a commission of $3.50 per share on every share of stock delivered pursuant to the first mentioned agreement. The attorney received this commission on the stock transferred, which, on the estate's shares, amounted to $735,098. George J. Gould testified that he asked the attorney to divide with him, and he received all of this commission except $125,000, which the attorney was paid as his compensation for effecting the sale. Thus George J. Gould received all of the commission on the shares of the individuals and $610,098 on the stock of the estate. He retained this for eight years, and it was not until he had been served with the order for his examination before trial that he paid to the estate $620,401.71, which was based on his computation of the amount received, and did not include interest on the amount withheld for eight years. In his letter transmitting the check for this commission he stated, " I felt I was entitled to this commission earned " through the attorney's services. " I had no notion that the case was any different as to the estate stock than as to the privately owned stock involved. I have been recently advised   *   *   *   however that I ought to give the estate the benefit of the *pro rata* share of this commission. I therefore have concluded to waive my personal claims and give the estate the benefit thereof by paying over the net commission per share above   *   *   *   [the attorney's] charge."

The utter lack of understanding of the obligation of a trustee to the estate, shown by the above transaction, characterized his dealings with the money and property of the estate throughout his administration of the trust. He mingled the money of the estate with his own. He sold securities of the estate from time to time through his personal accounts with stockbrokers, and the proceeds were credited to him personally in his margin accounts, not accounting to the estate for many months, and in some cases for more than a year after the sale of the stock. These debit balances ran as high as $3,000,000 or $4,000,000 at times, and gave him the opportunity to himself speculate with ample capital. He used this trust money as his own, and took to himself whatever profits were derived from the use thereof in personal enterprises

and speculations. In 1916, after his use of these moneys had been called to the attention of the other trustees by accountants in the preparation for this action, he paid interest to the estate on these debit balances. Although trust moneys are thus traced into his personal accounts, it will be impossible to ascertain the amount of profit he made from the use of them, because of his destruction of his books and records, which will be more fully discussed later.

It also appears that he personally made short sales of stock, and frequently some time afterward delivered stock belonging to the trust estate in satisfaction of the contract of sale. Mr. Justice SMITH refers to these transactions in his opinion, and while not palliating them upon any facts shown, seems to hold that this use of the property of a trust estate may be justified as having been indulged in in good faith and without resultant loss to the estate, and whether it would justify the removal of the trustee should be reserved " for decision in the administration action, where all the parties are before the court and the matters may be inquired into more particularly than in affidavits presented upon a motion." The reply to that contention is obvious. This motion was made in the action for an accounting, and, therefore, is in the " administration action." All the parties are before the court. And the question is not whether the trustee personally benefited, or the estate in fact suffered a loss. The trustee had no right to speculate with the stock of the estate. The added vice of the situation is that he speculated in his own name, and thus made it possible, if the price of the stock fell, to take the profit; if it advanced, to deliver the stock of the estate and receive therefor a price less than the market price, and escape a personal loss at the expense of the estate. A trustee cannot place himself in such a position that the temptation and opportunity to personally profit by his dealing is presented. Whether these transactions, as a matter of fact, were conducted for his personal profit cannot now be ascertained with any degree of certainty. The transactions were with stockbrokers in accounts carried either in his name or with fictitious designations. The record of his dealings in short sales was not carried on the books of the estate, but on his personal books and records.

Letters testamentary were issued on this estate on January 13, 1893. No accounting was had by the executors and trustees until this action was brought in 1916. In 1912 George J. Gould took his personal books, papers and records from his office to his residence on Fifth avenue, and, with the assistance of one of his sons, burned them in the furnace. For this reason he was unable to produce any books or other records of his personal transactions,

from 1893 to 1912, on the direct examination before trial. As we have seen, during this period of his trusteeship transactions involving millions of dollars of the estate were conducted through the personal accounts of George J. Gould with banks and stockbrokers. In his personal books and records existed the only means of determining whether he derived personal profit from these transactions, and the amount that, by reason thereof, he is indebted to the estate. His excuse was that he contemplated moving his office and he wanted to burn up old rubbish. He, however, did not move his office. When it appears that evidence which would have been competent and material to the subject-matter under judicial investigation has been destroyed, every presumption is against the spoiler. And while the amount of the profits cannot be shown, it is fair to presume that profit to no inconsiderable. amount was realized by George J. Gould out of these transactions.

There were numerous other transactions of an improper nature for a trustee to have indulged in, but it does not seem necessary to add to those discussed above. In my opinion they show that George J. Gould was an unfit person to discharge the duty of a trustee; that he had personally profited largely out of, and at the expense of, the estate; that he has not the slightest conception of the fiduciary duty of his position; and that the order removing him as such trustee was a wise exercise of the power of the court in the protection of the interest of the *cestuis que trustent.*

That some of the adults may have had knowledge of these transactions, and that the enjoyment of the interest vested in the infants may be remote, affords no excuse for the failure of the court to act promptly to conserve the trust.

The order should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., and GREENBAUM, J., concur; SMITH and FINCH, JJ., dissent.

SMITH, J. (dissenting):

I have no doubt of the power of the court in this action to make this order for removal, if facts are conceded sufficient to show that the appellant trustee has acted in bad faith and that the interests of the estate and of the *cestuis'que trustent* require such removal. This action is an action brought by the trustees for an accounting and for a ratification and confirmation of the acts of said trustees and asking that the will be construed and that the interests of the beneficiaries be ascertained; that the action of the trustees in deferring the physical division thereof into separate trust funds be approved and that the plaintiffs may obtain such advice and

direction of the court as to thus holding said funds in the future and that all other matters in connection with the administration of the said trust funds be ratified and approved and that plaintiffs have such other advice and direction of the court as may be necessary or advisable in the premises, and for such other and further relief in the premises as may be just. The action is what has been called an administration action. All persons interested in the estate are made parties thereto. None of the answers interposed asks for the removal of George J. Gould as trustee of the estate. By his consent he was examined before trial in part. Although two years have passed during which said examination has been pending, the defendants have not yet concluded their direct examination of George J. Gould and no opportunity has been given to him to make explanation of the various transactions which are claimed to have been illegal. This order, therefore, cannot rest upon the admissions made in such examination alone, because of lack of opportunity upon his part to make explanation of the transactions there involved. In reply to the affidavits, however, upon which this motion was made, George J. Gould has made affidavit giving his explanation at least in part of the various transactions which are claimed to have been illegal transactions and are claimed to show his *mala fides.*

That the court has power to remove a trustee in an administration action as relief incidental to the relief which the parties may seek in that action, is stated in 2 Lewin on Trusts (8th ed.), 848, and in Lewin Law of Trusts (12th ed.), 1088. In Perry on Trusts (6th ed.), section 282, the text reads: " Courts of equity, having jurisdiction to remove and appoint trustees, may be applied to either by bill or petition; or, if a bill is already pending for administration of the estate, application may be made in those proceedings, by motion." And this power has been held to exist although such relief be not asked either in the bill or in any counterclaim interposed. (See Lewin Law of Trusts [12th ed. by Dale & Streetem], 1088.)

Where the power to remove a trustee exists in an administration action as incidental thereto, the power to suspend or restrain the trustee from acting during the pendency of the action must be implied therein.

In section 768 of the Code of Civil Procedure it is provided: " Any proceeding which is required by statute to be instituted by petition may also be instituted by an affidavit setting forth the matter which it is required that the petition shall contain, accompanying a notice of an application for the relief which would properly be prayed for in the petition; and in like manner a pro-

ceeding which is required by statute to be instituted by affidavit may be instituted by petition." (See Civ. Prac. Act, § 119.) Apart from this provision of the Code, however, the practice adopted by the court upon this application is authorized in an action for administration of an estate where the court with full jurisdiction of the subject-matter and with all interested parties before it may grant the motion as incidental to its power and duty to supervise the execution of the trust, and the right to make a motion does not depend upon the provisions of the Code of Civil Procedure or the Civil Practice Act authorizing the granting of injunctions in other cases. The relief here sought asks for an accounting, approval of the acts of the trustees, for advice and direction of the court and such other relief as may be proper. This relief sought, if necessary, makes this an administration action leaving to the court full power to grant any relief which may be necessary for the proper administration of the trust. As long as this power is allowed as " incidental " to the granting of ultimate relief it should be exercised only so far as necessary to accomplish its purpose.

Again, a trustee is not to be removed for every breach of trust or " because the trustee has transgressed the strict line of his duty, providing there was no wilful default, but merely a misunderstanding." (2 Lewin Trusts [1888 ed.], *849, and cases cited; Lewin Law of Trusts [12th ed.], 1089.)

George J. Gould had been associated with his father before his father's death for fifteen years and had managed in large part his estate. His father expressed in the codicil to his will great confidence in him and had even provided that in case of disagreement among his trustees George J. Gould should control any action of the estate. It is claimed that he had a dominant influence over the other trustees. Not once did he exercise the right of stock control by a dominant vote as was given him in the will during all the term of the trust. Upon the record, his dominance, if it existed, would seem to have existed by reason of a deference to an older brother who had longer experience and better knowledge of the various properties which his father held and of the intricate problems arising therein. It does not appear that any act of his was ever questioned by any of his brothers and sisters during the existence of this trusteeship, until the bringing of this suit in 1916. His acts were concurred in by all the brothers and sisters, except that the sale of the Missouri Pacific and the Western Union were made without the knowledge of Helen Gould, by reason of her sentimental feeling that the financial interest of the estate should be retained by the estate in the properties which her father in part built up and in which he took a very great interest.

It is true that this knowledge and acquiescence by his brothers and sisters is not binding on the infants. But these infants had only a very remote interest in case a child should die without having made a will. This proceeding for the removal of a trustee is not for the purpose of punishment, but to conserve the interests of the *cestuis que trustent* and by reason of the necessity of such removal from any reasonable apprehension that their interests will be in danger by his continuance as trustee.

I will discuss only one of the grounds upon which his removal was made, to wit, that he had habitually subordinated the interests of the estate to his own private interests. While Gould denies the charge and swears that all transactions of which complaint are made were executed by him in good faith and with strict fidelity to the obligations of his trust, facts are charged in the moving affidavits which are not fairly met by such general denial. He was not authorized to mingle trust funds with his own. He might easily in his stock accounts have adopted another name, as he did in other instances and have kept those accounts separate. There would then have been no opportunity for his claiming the benefit of a profitable investment and placing upon the estate the burden of an unprofitable investment. The law does not permit a trustee to so commingle the trust funds with his private funds as to create such an opportunity. It matters little whether or not he availed himself of that opportunity at the expense of the estate. The fact is that by thus mingling the trust funds with his own in these accounts he created an opportunity so to do and this conduct endangered the trust, and unless further explained, should require his removal. It is denied on the part of Gould that these matters in which the funds were commingled were speculative accounts. They were called short sales. It is claimed, however, that these short sales are not what is ordinarily known as short sales " upon the street," but are sales for delivery at a later date, and that they were made for the purpose of getting rid of the stock of the Missouri Pacific railroad, which stock he should eventually have sold. But a short sale is always to an extent speculative. It is further claimed by appellant that they were not made in his own name, in order that it might not be known that the Gould estate was disposing of its own stock in this road and its connections. This answer is not satisfactory. Whether this transaction, as well as other transactions of which complaint is made in the moving affidavits, was made in bad faith, and whether the interest of the estate as it now exists may require his removal from the trusteeship, are questions for decision in the administration action, where all parties are before the court

and the matters may be inquired into more particularly than in affidavits presented upon a motion. Ordinarily, complete relief will not be given upon an interlocutory application. An interlocutory remedy is generally given for protection pending final determination. I have no doubt, however, that with the *prima facie* case made by the respondents here, George J. Gould should be suspended as trustee until the determination of the accounting proceeding, and the request for his removal from the trusteeship should be there determined. Under such an order all the interests of all the *cestuis que trustent* will be fully protected, while the evident desire of the testator that his son George should exercise a dominating influence in the administration of the trusts will be respected, and the court may find that there has been no act of bad faith on the part of George J. Gould, and that the interests of the estate do not demand his removal.

I am unable to see any reason why this matter has dragged along so slowly. Two years is more than sufficient time to finish the direct examination of George J. Gould upon his so-called examination before trial. If he had not consented to the examination it is very doubtful if the court would have permitted it. Inasmuch as all of these matters can be brought out fully upon an examination in the accounting proceeding, that action should be brought to a hearing and the matter determined therein as quickly as possible, even though this preliminary examination has not been finished.

There are other specific charges of grave import made against this trustee. Most of the acts complained of were committed with the knowledge of some, if not all, of the other children for whom the trust was being administered and without dissent on their part. All of these charges are under review in the accounting action and I can see no reason for a final disposition of the question on this interlocutory application where by interlocutory order all the interests of all parties will be fully protected until the final determination of the pending action and the trustee will be given a fair opportunity to explain more fully such charges than is possible in affidavit.

In my judgment the order should be modified so as to suspend the trusteeship of George J. Gould pending the determination of the administration action, and striking therefrom the order for absolute removal from his position as trustee, without costs to either party.

FINCH, J., concurs.

Order affirmed, with ten dollars costs and disbursements.