In the Matter of the Estate of JULIUS GROSSMAN, Deceased.

Surrogate's Court, New York County, September 17, 1935.

*Samuel R. Weltz,* for the objectants, Ella Grossman and others.

*Nordlinger, Riegelman & Cooper* [*Philip J. Dunn, H. H. Nordlinger* and *David B. Lefkowitz* of counsel], for the accounting executors, Walter A. Fribourg and another, respondents.

FOLEY, S. This is an application for the revocation of letters testamentary and for the removal as trustees of Walter A. Fribourg

and Edythe Fribourg, his wife. The remaining executor and trustee appointed by the will is the widow of the testator. She is a woman of advanced years and of greatly impaired health. The application is made by the widow, Mrs. Ella Grossman, and by her daughters, Alice J. Staff and Ruby H. Jordan, who are beneficiaries of the estate. Mr. Fribourg was the son-in-law of the testator. .

It has been conclusively proven that Mr. and Mrs. Fribourg, the respondent executors, purchased and sold securities of the estate through the personal brokerage accounts of Mr. Fribourg and that the proceeds of the sale of certain of these assets were mingled with Mr. Fribourg's own personal funds. It has also been conclusively proven that the respondent executors deposited the moneys of the estate and coupons from the estate bonds in other than in the estate account. These deposits were made in the name of Ella Grossman, the widow of the testator. The moneys were mingled with the individual funds of Mrs. Grossman and of other members of the family of the testator. Withdrawals from the mingled funds of the estate and of the individuals were made under a power of attorney executed by Mrs. Ella Grossman to Walter A. Fribourg, one of the respondents. He has admitted in his testimony that part of the mingled moneys were borrowed by him for his own account, or for a corporation in which he was interested. This loan was made in violation of the terms of the will of the testator and the statutes which require the investment of trust funds in legal securities only. The acts of the respondents in mingling the funds and depositing them in the individual account of Mrs. Grossman were not isolated but were continuous and numerous. They covered a period of two years and the total deposits approximated $40,000.

All of these acts were in violation of the provisions of section 231 of the Surrogate's Court Act. That section reads as follows: " Every executor, administrator, guardian or testamentary trustee shall keep the funds and property received from the estate of any deceased person separate and distinct from his own personal fund and property. He shall not invest the same or deposit the same with any person, association or corporation doing business under the banking law or other person or institution, in his own name, but all transactions had and done by him shall be in his name as such executor, administrator, guardian or testamentary trustee. Any person violating any of the provisions of this section shall be guilty of a misdemeanor."

At the time of the enactment of this section there was added a provision of law (now Surr. Ct. Act, § 104, subd. 7) which provides for the summary removal, without the necessity of the issuance

of a citation, of an executor or trustee who " mingles the funds of such estate with his own or deposits the same with any person, association or corporation authorized to do business under the banking law, in an account other than as such executor, * * * or trustee." By my decision in *Matter of Kramer* (127 Misc. 485; affd., 220 App. Div. 816) an executor was removed for similar misconduct. I there pointed out that the duty imposed upon fiduciaries by that section was based upon sound public policy. In that opinion the purpose of the Legislature in the enactment of section 231 of the Surrogate's Court Act was outlined by me in the following language: " It is a salutary protection to beneficiaries of estates. It tends to prevent diversion and defalcations by representatives of estates. It prevents the mingling of trust funds. It furnishes in many cases effective means of tracing the trust property. It earmarks the trust funds and affords an opportunity for beneficiaries to verify the receipts and disbursements of the executor, administrator, guardian or trustee. Its effect is to charge third persons dealing with a representative with knowledge that the funds of the estate are being used for a particular purpose which may be hostile to the trust."

In the face of the repeated violations of the statutes, the explanations of the respondents here are entirely unconvincing. The answer of the respondents that there was no loss in the funds of the estate does not palliate the violation of the law. It is sufficient to say that the assets and funds were imperilled even though no loss occurred and that the respondents violated the law. There are certain duties imposed by precedent and by statute upon fiduciaries which may not be transgressed. Where violations are proven, removal must follow. The absence of bad faith or dishonesty or loss to the beneficiaries is not important. As to one of these rules enforced upon fiduciaries which invalidates all contracts made by a trustee in which he is personally interested, Judge ANDREWS of the Court of Appeals, in *Munson, etc.,* v. *Syracuse, G. & C. R. R. Co., etc.* (103 N. Y. 58), stated: " The law permits no one to act in such inconsistent relations. It does not stop to inquire whether the contract or transaction was fair or unfair. It stops the inquiry when the relation is disclosed, and sets aside the transaction or refuses to enforce it, at the instance of the party whom the fiduciary undertook to represent, without undertaking to deal with the question of abstract justice in the particular case. *It prevents frauds by making them as far as may be impossible, knowing that real motives often elude the most searching inquiry.*" (Italics mine.)

The latter pronouncement applies with equal force to the provisions of section 231. The statutory prohibition against the

mingling of estate funds is a rule of conduct which trustees and executors are bound to obey. As in the *Munson* case, it was intended to prevent diversion or fraud. The section is explicit and may not be weakened or nullified by judicial interpretation. The proven acts of misconduct, therefore, require the summary removal of the respondents.

While specific misconduct has been found by me requiring removal, certain facts developed at the trial of the proceeding, and the general circumstances surrounding the administration of the estate, throw additional light upon the unfitness of the respondents to continue its management.

The testator, Mr. Grossman, died in 1930. He left an estate of approximately $600,000. The entire estate was placed in trust for the benefit of the widow for life. Upon her death three further separate trusts were to be created with income payable to each of the three daughters of the testator. In the probate of the will the executors were represented by a reputable firm of attorneys. A few months after the will was admitted, this law firm notified one of the executors that they would no longer act as attorneys for any of the executors, because they were prevented from " rendering proper and independent service." It appears from the evidence that thereafter Fribourg, as the dominant executor, conducted the administration of the estate without new counsel and guided only by a public accountant. This situation continued for at least a period of three years. If a competent attorney had been employed by the executors many of the acts of misconduct now complained of would have been avoided.

Another evidence of unfitness is demonstrated by the improper withdrawal of approximately $12,000 each by the respondents, Mr. Fribourg and his wife, which was claimed as executors' commissions. Commissions may not be withdrawn except by proper authorization in a decree of the surrogate. It should be noted also that the executors took their full commissions in that capacity. Under the terms of the will they are entitled to only a single commission for their services in both capacities as executor and as trustee. (*Matter of Ziegler*, 218 N. Y. 544; *Matter of Vanneck*, 175 App. Div. 363.) Even under the authority of a decree in an accounting proceeding they would have been entitled to half commissions only for receiving the funds of the estate. The remaining half for paying over could only be awarded at the completion of the administration of the ultimate trusts. The mere premature withdrawal of commissions would not alone justify the removal of the respondents. In such cases the courts enforce restitution with interest. When combined with other proven acts of misconduct, the withdrawal, however,

indicates the disregard of the rights of the beneficiaries and a lack of appreciation of the legal duties of fiduciaries. (*Matter of Havemeyer*, 3 App. Div. 519.)

It has been further shown that the executor, Walter A. Fribourg, has effected his election as president of Julius Grossman, Inc., a corporation in which the estate held a substantial block of stock. In that office he is in receipt of an annual salary of $5,200. Thereby he placed himself in a position where his personal interest and the interest of the beneficiaries over whom he was trustee were antagonistic. He was not connected with the company before the death of the testator. In such situations the courts have held that the adequacy or reasonableness of the salary paid is not material. The law, solicitous of undivided loyalty to the beneficiaries, prohibits the assumption of antagonistic interests. While not urged here as a specific ground of removal of the respondents, it has been held in two decisions of the Appellate Division, First Department, that the mere acceptance by the fiduciary of the corporate office upon a salaried basis is sufficient reason for removal (*Matter of Hirsch*, 116 App. Div. 367; *Pyle* v. *Pyle*, 137 id. 568; affd., 199 N. Y. 538). (See, also, *Matter of Kirkman*, WINGATE, S., 143 Misc. 342, 347.)

A further discussion of the acts of the respondent Fribourg and his usurpation of the management of the estate with the assistance of his wife, the other respondent, would serve no useful purpose. They acted in concert and thus were able to control the administration as against the other executrix. Their conduct has led to unfortunate family differences. It is enough to say that giving to the respondents due consideration to their own explanations, the violations of the provisions of section 231, when construed with the explicit terms of section 104, subdivision 7, require that the letters testamentary issued to them be revoked and their removal as trustees be decreed.

The widow of the testator has offered to resign as executrix and trustee. If that course of action is followed, it will make possible the appointment of a new single administrator c. t. a. and a substituted trustee. The testator himself directed in his will that in case of the death or resignation of all his executors and trustees a bank should be appointed. No specific bank was named. The beneficiaries are directed to submit written recommendations for the appointment of a new fiduciary in accordance with the foregoing suggestion of the testator.

Submit decree on notice accordingly.