In the Matter of the Estate of DAVID ISRAEL, Deceased.

Surrogate's Court, New York County, February 7, 1938.

*William A. Hyman,* for the petitioners Ernestine Griffenhagen and Estelle F. Pels.

*John P. O'Brien,* special guardian for David Arbetter, Ruth Jones, Doris I. Jones, Muriel R. Jones and Dramon Jones, infants, petitioners.

*Charles A. Cohen,* special guardian for Dorothy Cohen, an infant, petitioner.

*Powers, Kaplan & Berger* and *Strauss & Abrahams* [*David A. Ticktin* and *Jerome A. Strauss* of counsel], for the executors.

*Irving L. Levey* [*Mortimer J. Goodstein* of counsel], for Lester L. Jones, general guardian of Muriel R. Jones, an infant.

FOLEY, S. Certain of the legatees named in the will and the infant beneficiaries of trusts created by it petition in this proceeding for the revocation of letters testamentary issued to the four executors and for their removal. The charges of misconduct cover specifications of bad faith, abuse of discretion, gross negligence and various acts asserted to be in breach of trust. It is unnecessary to discuss the evidence adduced in support of all of these charges. It is sufficient to cover the proven grounds of removal.

David Israel died on March 27, 1927. Letters testamentary were issued on June 16, 1927. The executors who were named in the will and who qualified were a sister of the decedent, a cousin, a relative of the latter and an attorney who had represented the testator in his lifetime.

The assets of the estate, as set forth in the account filed by the executors, in general, consisted of $77,000 of readily salable bonds, $113,500 of mortgages and $613,000 in equities in parcels of real estate, or a total gross estate of approximately $803,500. In his will the testator made numerous outright bequests to relations and to other individuals and to charitable and religious institutions. These legacies aggregated the sum of $477,000. He also directed the creation of five trusts in varying pecuniary amounts aggregating the sum of $135,000. The *cestuis* of these trusts were all infant relatives.

The statutory grounds for the removal of a fiduciary in this court applicable to the present proceeding are set forth in subdivisions 2 and 3 of section 99 of the Surrogate's Court Act. A fiduciary may be removed for " having wasted or improperly applied the money or other assets in his hands * * * or otherwise improvidently managed or injured the property committed to his charge " whereby he is " unfit for the due execution of his office." A fiduciary may also be ousted where " he has wilfully refused or without good cause, neglected to obey * * * any provision of law relating to the discharge of his duty."

It has been conclusively established by the evidence that all four executors were guilty of dereliction justifying and compelling their removal upon four general grounds:

(1) Willful neglect in the payment of the Federal estate tax and the New York State transfer tax, whereby large penalties have accrued against the estate.

(2) Failure to obey the mandate of the testator to set up the trusts for the benefit of the infants and a similar failure to set aside out of the income of the estate the accumulated income for their benefit over a period of ten years.

(3) Gross abuse of discretion by the executors in the preferred payment of legacies to the outright legatees in the sum of $195,000, to the detriment of the rights of the infants.

(4) Withdrawal of normal commissions by the executors in the sum of $24,000 and their subsequent attempt to conceal the true nature of the transaction by treating such payments on the books of the estate as payments on account of the legacies given to two of the executors.

In respect of the New York State transfer tax it has been shown that the total amount of the tax assessed against the transferees of the estate was $25,978.30. From 1927 to 1934, a period of over seven years, no payment to the State was made on account of these taxes. During that period approximately $12,000 had accrued in penalties. A partial payment of principal was made in the year 1934 and a final payment of principal in 1935. A payment on account of the penalties which had accrued was made to the extent of $2,600 in 1936. Approximately $10,000 in penalties still remains due and unpaid.

The Federal inheritance tax is estimated at $25,000. It has never been finally adjusted. Penalties have accrued upon it in the sum of $14,000. The executors paid only the sum of $6,401 on account, and there remains due a tentative balance, after ten years of the administration of the estate, of about $32,000 of principal and penalties.

Not the slightest justification for the willful neglect to pay the amount of the original taxes or to prevent the piling up of penalties has been shown. The executors had available as assets of the estate salable bonds in the sum of $77,000. They were sold shortly after they qualified. Apparently the funds produced were diverted to the payment of legacies. Sufficient of the proceeds of sale should have been immediately earmarked as applicable to the payment of the inheritance taxes. The duty to pay the State tax was imposed upon the executors by our Tax Law. If a temporary payment had been made within the first six months after death a five per cent discount might have been saved to the estate. The duty to make the payment within that period, however, was not mandatory. Payment should have been made, however, within the eighteen months' period authorized by section 223 of the Tax Law. Penalties, by way of interest, would thereby have been avoided.

The assessment of the State tax presented no complications either in the nature of the property or the presence of any contingent assets or contingent claims against the estate. Equally simple was the final adjustment of the Federal tax. It is asserted by the petitioners that the estate may lose the benefit of the eighty

per cent credit on the Federal tax by the failure to pay the State tax within the period of three years from the date of death, whereby, if such credit is not finally given, the additional loss to the estate may aggregate $20,000. In any event, the gross negligence of the executors on this phase of the proceeding will result in a wastage of estate assets to the extent of at least $12,000 in penalties on the New York transfer tax and a larger amount for penalties upon the tax due the Federal government.

In their treatment of the trusts created by the testator for the benefit of the infants culpable negligence and willful disobedience of the terms of the will have been shown. Moreover, the executors violated the duty imposed upon them by law by failing to set up the trusts within a reasonable period, to segregate them and to accumulate the moneys for certain of the infants in order that the fund might be available for payment under the mandate of the will as each infant attained majority. There was ample net income earned by the estate available for this purpose during the first seven years of the administration. In each of these years a profit was derived from the operation of the real estate. Gross rents aggregated about $1,000,000. Net rents exceeded $225,000. Unjust discrimination was used as against certain of the infant *cestuis* and in favor of a *cestui* who was the son of one of the executors. The favored beneficiary was actually paid approximately $15,000 in income over a period of nine years. The principal of his trust was $50,000. The total of the principal of the other trusts for the other infants was $85,000. The method adopted by the executors for the accumulations for the benefit of the unfavored *cestuis* was a system of mere bookkeeping entries whereby interest was entered from year to year at an arbitrary rate. By that process a fictitious reserve of income was created for them. Eight thousand dollars only was actually paid in income to the other infant *cestuis*. One of them whose trust principal was $15,000 received only $100 during this period of nine years. In the same period payments in the sum of $195,000 were made to the outright legatees, including the two executrices and the relations favored by them. These payments were made out of the net rents of the real estate and represented, in part, diversion of the income of the infants.

It was the duty of the executors to segregate from the date of death the share of income in cash for the benefit of the infant *cestuis*. (*Gould* v. *Gould*, 108 Misc. 42; affd., 203 App. Div. 807.) These accruals should have been promptly invested in legal securities. As each infant attained his or her majority the total fund, less any advance payments, would have been available for distribution to the respective beneficiary. The unfavored beneficiaries

now of age find that they are unable to obtain either accumulated income or principal because the assets now consist of frozen, unsalable real estate. Those who are not of age find themselves in a position where there are no funds available out of accumulated income which might be directed by order of the surrogate to be applied to their necessary support or education. By reason of their mishandling of these trusts, the infants and former infants will suffer the loss of a substantial part of their trust funds.

In the four years between 1928 and 1931 the executors withdrew $24,000 in commissions without authority of any decree of this court. Each of them received the sum of $6,000. In 1934 their attention was called by a new attorney retained by them to the impropriety of these payments. Instead of making restitution the sum was applied by bookkeeping entries to a payment of $12,000 each on account of the legacies due the executrices Esther Arbetter and Fannie Osborne. Thereupon each of the other executors gave a note for $6,000 to these two legatees. In their testimony the executors admitted they have not paid any part of these notes and that they are without any property or funds available to repay the estate the amount of their unauthorized withdrawals in the event of a surcharge based upon a denial of commissions.

Standing alone, these withdrawals of commissions would not constitute a basis of removal. (*Matter of Grossman*, 157 Misc. 164; affd., 250 App. Div. 503.) When viewed with their other misconduct and negligence in the management of the estate, however, their acts typify their disregard of the responsibilities of fiduciaries which become an additional reason for their removal. (*Matter of Havemeyer*, 3 App. Div. 519.)

At the close of the trial certain of the respondents offered to resign upon condition that they be awarded their full commissions. Acceptance of such resignations, with or without that condition, was refused by the surrogate. To have permitted a voluntary withdrawal in the face of the proven negligence and other misconduct would, in the opinion of the court, have been a miscarriage of justice. The conduct of the executors was plainly motivated by a desire to delay the completion of the administration of the estate for the purpose of obtaining large commissions. Two of the executors were residuary legatees. The two other residuary legatees were closely related to them. It is clearly apparent that their original plan was to avoid a sale of the assets in order to await the extinguishment of the dower of the widow by her death and to retain the properties for themselves in their capacities as residuary legatees. This course of conduct has resulted in grave impairment of the rights of the other beneficiaries, and particularly the infants.

A further discussion of the acts of the respondents would serve no useful purpose. It is sufficient to say that they have been guilty of willful violations of the rules imposed upon executors and trustees in the management of estates. They have wasted and improperly applied the estate assets and have improvidently managed and injured the property committed to their care. They have neglected to obey the mandates of the Federal and State taxing statutes. Their unfitness for the due execution of their office has been proven, and the specific grounds of removal set forth in section 99 of the Surrogate's Court Act have been established. A discussion of the authorities which compel the removal of a delinquent and derelict fiduciary in this situation is unnecessary. A comprehensive review of the decisions may be found in *Gould* v. *Gould* (108 Misc. 42; affd., 203 App. Div. 807). (*Matter of Havemeyer*, 3 App. Div. 519; *Pyle* v. *Pyle*, 137 id. 568; affd., 199 N. Y. 538; *Matter of Hirsch*, 116 App. Div. 367; affd., 188 N. Y. 584; *Haight* v. *Brisbin*, 100 id. 219.)

For the protection of all of the beneficiaries of the estate and in order that the assets may be properly liquidated and the terms of the will carried out, the surrogate, upon the recommendation of a large group of those interested, will appoint the Sterling National Bank and Trust Company as administrator *c. t. a.* and as trustee. The executors are directed to file within thirty days a supplemental account setting forth all their transactions from the date of the last transaction set forth in the last supplemental account to the effective date of their removal. Objections to such supplemental account may be served and filed by any of the persons interested within fourteen days after written notice of the filing of the supplemental account is served by the attorneys for the executors. The decree to be submitted herein may contain an appropriate provision requiring delivery to the new fiduciary of all of the books and records of the estate with the right of access by any of the persons interested in the accounting proceeding, under the supervision of the officers and employees of such fiduciary.

Submit decree on notice accordingly.