In the Matter of the Estate of DAVID ISRAEL, Deceased.*

Surrogate's Court, New York County, February 24, 1941.

* See, also, 176 Misc. 786.

*Strauss & Abrahams* [*Jerome A. Strauss* of counsel], for Samuel S. Isaacs, Esther Arbetter and Lester Wolfe, as executors, etc.

*Murray L. Jacobs*, for Fannie Osborne, as executrix, etc

*Glass & Lynch* [*Leslie Kirsch* and *Thomas H. McManus* of counsel], for the Sterling National Bank and Trust Company of New York, as administrator *c. t. a.* and trustee.

*Irving L. Levey* [*Mortimer J. Goodstein* of counsel], for Lester L. Jones and others, objectants.

*William A. Hyman* [*Albert Mannheimer* of counsel], for Irene H. Astroff and others, objectants.

*James Allan Bernson*, for Ruth Jones, objectant.

*Charles A. Cohen*, special guardian of Dorothy Cohen.

*John P. O'Brien*, special guardian of Doris Jones, Dramon Jones and David Arbetter.

FOLEY, S. In this contested accounting proceeding numerous and complicated issues were raised by the objections filed by the

beneficiaries, by the special guardian and by the administrator *c. t. a.* to the amended and supplemental accounts of the former executors of this estate. All four of the executors, in a separate proceeding for their removal, were ousted from their office for proven acts of misconduct, negligence and delinquency. (*Matter of Israel*, 166 Misc. 156; affd., 256 App. Div. 1063; leave to appeal denied, 281 N. Y. 886.) An order of reference was made for the purpose of the hearing and determination of the issues in the contested accounting proceeding. The learned referee, with meticulous thoroughness, has made and filed his extensive report disposing of the issues litigated before him. Separate motions have been brought on by certain of the parties who seek to modify that report in particular phases included in it.

The report of the referee is confirmed excepting as to four matters hereinafter considered. In his report he has grouped the main issues into twenty-five parts. He has found various grounds of misconduct as bases of surcharge against the former executors in the amount of approximately $100,000.

In view of the careful analysis of the evidence and the citation of pertinent decisions made by the referee, it is unnecessary to discuss more than a few of the problems which he has correctly solved.

The referee properly surcharged the executors with the sum of $24,000 illegally withdrawn by them as normal commissions without the authorization of a decree of the surrogate. Counsel for the former executors is in error when he argues that the objection to that item was withdrawn. The record contradicts his version. The special guardian for the infants properly refused to retreat from his position of attack upon this item. In addition, the surrogate made it one of the specific grounds of ouster in the removal proceeding. (*Matter of Israel, supra.*) A surcharge of this amount and the restitution of the moneys taken by the executors were compulsory where there was disclosed such willful violation of the duties of fiduciaries coupled with a belated scheme to conceal the withdrawal of the commissions by an attempt to disguise it as a payment on account of legacies.

The referee was likewise correct in directing a surcharge against certain of the executors who claimed to be insolvent and unable to respond to a direction for payment under the decree to be entered in this proceeding Such an attempt to escape a surcharge is as futile and ridiculous as would be a defense in an ordinary action for a money judgment where it was claimed that before judgment was entered, the defendant was financially unable to pay it.

The referee has properly held that the legacy of $25,000 to the three children of the testator constituted a debt of the estate and

gave the legatees a priority in their status as creditors. The payment of the legacy was required to be made by the testator under a separation agreement entered into between him and his wife. In this respect it is similar to the pecuniary provisions required to be given by the testator to Donald Bloomingdale pursuant to a separation agreement in *Matter of Bloomingdale* (278 N. Y. 435). The character of such a legacy, based upon a valid contract, and the right of the legatee to priority were also considered by the Court of Appeals in *Matter of Cameron* (278 N. Y. 352, 358)

Finally upon these phases of the case the surrogate specifically approves the conclusion of the referee that the final amount due from the executors and trustees " resulting from preferential payments to legatees and the failure to set up the trusts, cannot be determined until the estate is fully liquidated." In this connection the administrator *c. t. a.* should use every effort to bring about an expeditious liquidation of the remaining assets of the estate. These instructions need not necessarily result in sales at sacrifice prices. Neither should liquidation be delayed by an attempt to obtain selling prices higher than existing market values.

The only exceptions in which the report will be modified are as follows:

(1) One of the executors, Samuel S. Isaacs, rendered professional legal services in the administration of the estate. The referee has found that the reasonable value of such services was $6,500. The surrogate approves the allowance of that amount. Payments on account of the compensation were made from time to time during the administration of the estate which aggregated the foregoing amount of $6,500. One of the items of surcharge made by the referee is the sum of $2,350.74 representing interest on these installments of compensation from the dates of payment. They cover a period of several years. The theory of the referee in making the surcharge was that no payments could be lawfully made to the attorney-executor until approved by the surrogate under section 285 of the Surrogate's Court Act by a decree in an accounting proceeding. The customary procedure in the Surrogates' Courts over a long period of years has been to permit an executor, who renders professional services in the administration of the estate, to receive partial payments. When the accounting is brought on the surrogate fixes compensation for such services in a reasonable amount. Where the total payments have been reasonable in amount they are thereby confirmed by the surrogate. Where they are excessive, the amount is reduced to a reasonable sum. In the latter class of cases, the attorney-executor and his cofiduciaries are jointly liable for the restitution of the excessive payments

and interest is customarily charged against them from the dates of the withdrawals of such excessive amounts.

In cases where the withdrawals have been reasonable, and no loss has been sustained by the estate, it would be grossly unjust to compel the attorney-executor to perform services in a long drawn out administration without current payments on account. It would likewise be unjust to compel him to wait for the final accounting before he could receive any fee and thereby to suffer the payment of income taxes upon the total amount in a single year in which it was received, although his efforts might have covered several years preceding its allowance or confirmation by the surrogate. The rule as to attorney's fees is different from that as to a fiduciary's commissions, which can never be paid without the prior authorization of the decree of the surrogate. The surrogate holds that the single citation (not officially reported) urged as a contrary authority has no pertinency here. It did not properly construe the terms of section 285 of the Surrogate's Court Act and is inconsistent with the procedure which has been pursued over a long period of years in this court. The referee's report will, therefore, be modified by striking therefrom the surcharge of interest in the foregoing sum of $2,350.74.

(2) The report of the referee will be modified by reducing the total compensation allowed to Messrs. Strauss & Abrahams, who acted as attorneys for the executors, from the sum of $15,000 to the sum of $10,000 for all services rendered and to be rendered up to the entry of the final decree in this proceeding. From such amount of $10,000 there must be deducted the sum of $5,564.35 which has already been paid to them. Costs will be disallowed to them. Their proper disbursements may be taxed in an appropriate bill.

(3) The referee has held that there is indication of intent on the part of the testator in the will that the trusts created respectively for each of four of the grandchildren of the testator and the further trust for a cousin, David Arbetter Israel, were to be preferred over the legacies contained in the will. The contention that this question was not properly before the referee is overruled. The special guardian for the infant beneficiaries of certain of these trusts had raised the question. The referee had all of the powers of the surrogate to pass upon the issues presented to him. Those powers included authority to construe where it was necessary " to make such determination as to any will in a proceeding pending before him." (Surr. Ct. Act § 40, subd. 8; *Matter of Evans*, 165 Misc. 752; affd., 258 App. Div. 1037; affd., 284 N. Y. 571.)

Authority on the part of the referee and the surrogate to construe the will also existed under section 145 of the Surrogate's Court Act. The material part reads as follows: " If, in any proceeding for the judicial settlement of an account of an executor or administrator with the will annexed, or testamentary trustee any question is presented respecting the propriety of any debit or credit in such account, the determination of which involves a construction of any portion of the will, the presentation thereof shall have the same effect as if the petition had expressly requested a construction of the particular portion of the will involved in such determination." It is obvious here in view of the issues presented to the referee that necessity existed for the construction of the will because of the question of the propriety of certain debits and credits in the account. A construction was particularly necessary because of the necessity of protecting the rights of the present and former infant beneficiaries of these trusts.

Technical opposition is urged, however, to the conclusion of the referee that the testator intended priority, because no evidence was taken before him to show that the beneficiaries of these trusts were " otherwise unprovided for " under the rules applicable to the determination as to whether a trust for the support and maintenance or education of near relatives who are special objects of bounty is entitled to a priority over legacies in the event of insufficiency of assets. (*Matter of Cameron*, 165 Misc. 792; affd., 253 App. Div. 888; affd., 278 N. Y. 352.) There can be no doubt under the will here involved that the grandchildren of the testator were special objects of bounty and that the trusts for their benefit were by the terms of the will and by operation of law given for their support and maintenance. (Pers. Prop. Law, § 17; Real Prop. Law, § 62; Surr. Ct. Act, § 221.) As to the cousin, David Arbetter Israel, the trust is even more explicit. The income was given for his " support, maintenance and education." The testator's solicitude for him was indicated by the request that David Arbetter adopt the name Israel and that the change of name be made as an expense of the estate. Finally there was a strong religious sentiment for the beneficiary expressed in the final sentence of paragraph twenty-eighth which created the trust for David's benefit. The only omission of proof to establish a right of priority in favor of these five special beneficiaries is that they have not been shown to have been " otherwise unprovided for." The surrogate holds that such proof is limited to possession of funds and property in the individual ownership of each beneficiary. In other words, the amount of property owned by their parents is of no relevancy. A hearing for the purpose of submitting proof upon this issue will be had on the 28th day of April, 1941, at ten-thirty A. M.

(4) The contention of the executors that they are entitled to a further credit to the extent of $6,000 upon the total surcharge made against them is sustained and the report will be modified accordingly. That item was described in Schedule A-3 of the supplemental account covering the period from January 1, 1937, to February 5, 1938. It is set forth therein as having been advanced by the executors to the estate on July 1, 1937. No objection was filed to the allowance of the item as a credit. Supporting testimony of the actual loan was given by Mr. Wolfe, one of the executors. It was apparently omitted as a credit to the executors by oversight. It is properly allowable as a deduction from the net surcharge made by the referee as modified by the surrogate.

Finally upon the question reserved for determination by the surrogate, management commissions in the sum of approximately $20,000 upon the collection of gross rents, for the period from about October 4, 1933, to the final date of the account, are disallowed because of the proven misconduct of the former executors. (*Matter of Israel, supra.*) The actual and reasonable costs for the management and collection of rents by persons other than the former executors as allowed by the referee are approved as proper charges. (*Matter of Wendel,* 159 Misc. 900; affd., 248 App. Div. 713; affd., 273 N. Y. 532.)

Normal commissions are also disallowed to the former executors because of their misconduct. (*Matter of Israel, supra.*) Such disallowance not only extends to the sum of $24,000 withdrawn by them and made the basis of a surcharge in a preceding part of this decision, but also to a disallowance of any claim for additional normal commissions. (*Matter of Bloomingdale,* 172 Misc. 218, at 229, *et seq.; Stevens* v. *Melcher,* 152 N. Y. 551, 583; *Cook* v. *Lowry,* 95 id. 103, 114; *Matter of Taft,* 145 Misc. 435; *Matter of Hidden,* 243 N. Y. 499; *Matter of Garvin,* 256 id. 518.)

After the foregoing hearing and the determination of the issue of construction as to whether the trusts for the infants and former infants are preferred, costs may be taxed and a decree may be submitted on notice settling the accounts in accordance with this decision.